**Shirley TAYLOR, Claimant Below, Appellant,**

v.

**DIAMOND STATE PORT CORP., Employer–Below, Appellee.**

No. 287, 2010.

Supreme Court of Delaware.

Submitted: Feb. 2, 2011.
Decided: Feb. 16, 2011.
Reargument Denied March 4, 2011.

Yvonne Takvorian Saville (argued) and Michael Weiss of Weiss & Saville, P.A., Wilmington, Delaware, for appellant.

Francis X. Nardo (argued) and Natalie L. Palladino of Tybout, Redfearn & Pell, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

Shirley Taylor sustained injuries while working for Diamond State Port Corporation. The Industrial Accident Board and the Superior Court determined that the workers' compensation wages she should receive should be based upon an average weekly wage computed according to 19 *Del. C.* § 2302(b). Because the General Assembly intended that she be compensated for lost earning capacity, her average weekly wage rate should be based on work actually performed and computed according to 19 *Del. C.* § 2302(b)(1), we reverse.

## I. FACTS AND PROCEDURAL HISTORY

On August 2, 2007, Shirley Taylor suffered an injury while working for Diamond State Port Corporation. She suffered damage to her head, neck, back, and right ankle. She received workers' compensation benefits for total disability, temporary partial disability, permanency, and medical expenses.

At the time of her injury, Diamond State had employed Taylor for about 12 years. She worked as a laborer, unloading ships as they came into port, and she earned $18 per hour of work. The Superior Court described her work schedule as "sporadic" for two reasons. First, Diamond State did not always have work to offer Taylor—when there were ships to unload, the company needed labor; when there were no ships to unload, the company did not need labor. Second, Taylor suffered from health conditions unrelated to her job that occasionally prevented her from working. Accordingly, Taylor did not work for Diamond State during 10 of the 26 weeks before her injury. During the 16 weeks that she did actually perform work, she earned between $561 and $1113 per week. She earned a total of $12,610 in wages from Diamond State during the 26 weeks preceding her injury.

Because of Taylor's "sporadic" work schedule, Taylor and Diamond State could not agree on the method for calculating her "average weekly wage" at the time of her injury. Taylor's "average weekly wage" is the basis for calculating the amount of workers' compensation wage benefits Diamond State owes her, and the parties agree that she qualifies for compensation based on her "average weekly wage." The parties dispute, however, how to calculate the "average weekly wage." Diamond State claims that under section

2302(b), Taylor's average weekly wage is $485.[1] Diamond State paid her workers' compensation benefits based on that rate. Taylor claims, however, that because she had actually "worked less than 26 weeks" of the 26 weeks preceding her injury, her average weekly wage should be calculated according to section 2302(b)(1). That would result in an average weekly wage rate of $788.12 based on $12,610 in total wages received during the 26 weeks preceding her injury divided by 16—the number of weeks of the total 26 weeks preceding her injury during which she *actually performed* work while employed by Diamond State.

On May 21, 2009, the Industrial Accident Board held a hearing to resolve the dispute. On July 29, 2009, the IAB issued a written decision in which it agreed with Diamond State and held that section 2302(b), rather than section 2302(b)(1), determined Taylor's "average weekly wage." Taylor appealed this decision to the Superior Court. On April 29, 2010, the Superior Court published a memorandum opinion affirming the IAB decision. Taylor now appeals.

## II. ANALYSIS

■■■ The only issue presented on this appeal is whether 19 *Del. C.* §§ 2302(b), 2302(b)(1), or 2302(b)(2) dictates the proper calculation of Taylor's "average weekly wage." The parties disagree on the prop-

er statutory interpretation. We review issues of statutory construction and interpretation *de novo*.[2]

■■■ The rules of statutory construction are well settled.[3] First, we must determine whether the statute under consideration is ambiguous.[4] It is ambiguous if it is susceptible of two reasonable interpretations.[5] If it is unambiguous, then we give the words in the statute their plain meaning.[6] If it is ambiguous, however, then we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious whole.[7] We also ascribe a purpose to the General Assembly's use of statutory language, construing it against surplusage, if reasonably possible.[8]

### A. The General Assembly Amended 19 Del. C. § 2302 In 2007 And The Provision Aims To Compensate Injured Employees For Their Lost Earning Capacity.

In 2007, the General Assembly amended the text of 19 *Del. C.* § 2302(b) by, changing some of the language and adding subsections (1) and (2).[9] Currently, section 2302(b) reads in relevant part:

(b) The average weekly wage shall be determined by computing the total wages paid to the employee during the 26 weeks immediately preceding the date of injury and dividing by 26, provided that:

1. $12,610 in total wages received during the 26 weeks preceding her injury divided by 26.

2. *Bay Surgical Servs. v. Swier*, 900 A.2d 646, 652 (Del.2006).

3. *Dewey Beach Enters., Inc. v. Bd. of Adjustment*, 1 A.3d 305, 307 (Del.2010).

4. *Id.*

5. *Id.*

6. *Id.*

7. *Dewey Beach Enters., Inc.*, 1 A.3d at 307 (quoting *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994)); *Bay Surgical Servs.*, 900 A.2d at 652.

8. *Dewey Beach Enters., Inc.*, 1 A.3d at 307 (quoting *Oceanport Indus., Inc.*, 636 A.2d at 900).

9. 76 Del. Laws ch. 1, § 5 (2007).

(1) If the employee worked less than 26 weeks, but at least 13 weeks, in the employment in which the employee was injured, the average weekly wage shall be based upon the total wage earned by the employee in the employment in which the employee was injured, divided by the total number of weeks actually worked in that employment;

(2) If an employee sustains a compensable injury before completing that employee's first 13 weeks, the average weekly wage shall be calculated as follows:

a. If the contract was based on hours worked, by determining the number of hours for each week contracted for by the employee multiplied by the employee's hourly rate;

b. If the contract was based on a weekly wage, by determining the weekly salary contracted for by the employee; or

c. If the contract was based on a monthly salary, by multiplying the monthly salary by 12 and dividing that figure by 52; and

d. If the hourly rate of earnings of the employee cannot be ascertained, or if the pay has not been designated for the work required, the average weekly wage, for the purpose of calculating compensation, shall be taken to be the average weekly wage for similar services performed by other employees in like employment for the past 26 weeks.

When the General Assembly amended section 2302(b) in 2007, it confirmed in the official Synopsis to the amending legislation that it was merely clarifying—not changing—the calculation of an injured employee's average weekly wage rate.[10] This stated desire for continuity signals that the legislative intent underlying the new formulation of section 2302(b) is the same as it always has been—namely, to compensate injured employees for their lost earning capacity rather than for their lost income.[11]

## B. *The Statute Is Ambiguous.*

The dispute in this case centers primarily on the proper interpretation of the word "worked" in section 2302(b)(1). "Worked" appears twice in the subsection, and we interpret it to have the same meaning both times. Taylor argues that "worked," for purposes of this statute, indicates something synonymous to "work actually performed." Under Taylor's proffered construction, we should calculate her average weekly wage according to section 2302(b)(1) because, despite her 12 year employment with Diamond State, she only performed work during 16 of the 26 weeks preceding her injury. Contrarily, Diamond State argues that "worked," for purposes of this statute, indicates something synonymous to "was employed." Under Diamond State's proffered construction, we should calculate Taylor's average weekly wage according to section 2302(b) because Diamond State employed Taylor for the entire 26 week period preceding her injury.

Both of these proffered constructions are reasonable and lend themselves to compelling policy support. Because the statute is susceptible of both reasonable interpretations, it is ambiguous, and we must attempt to ascertain the General Assembly's intent.

10. *See id.*

11. *Howell v. Supermarkets Gen. Corp.,* 340 A.2d 833, 836 (Del.1975).

## C. Taylor's Proffered Interpretation Is Correct, And Taylor Should Be Awarded Workers' Compensation Benefits On The Basis Of An Average Weekly Wage Calculated Pursuant to Section 2302(b)(1).

Having determined that the statute is ambiguous, we consider its various provisions together and read them in light of each other in order to produce a harmonious whole.[12] To the extent possible, we construe statutory language against surplusage, and assume the General Assembly used particular text purposefully.[13] Ultimately, we conclude that Taylor's proffered interpretation is correct and that where the General Assembly inserted the term "worked," in section 2302(b)(1), they meant work actually performed.

Section 2302(b) makes no distinction between injured employees who have been employed for at least six months and those who have been employed for less. Therefore, all injured employees, regardless of how long they have been employed by their employer, come within the purview of section 2302(b). Had the General Assembly wanted to calculate the average weekly wages of six-month-or-longer employees differently from employees employed for less than six months, they could have easily distinguished their respective situations, but the General Assembly did not.

Because 2302(b)(1) and 2302(b)(2) are subsections to 2302(b), rather than alternative provisions at equal levels of authority, we read them as detailing particular factual exceptions to the otherwise general "divide by 26" rule explained in section 2302(b). They do not set out a different calculation to apply to an altogether different class of injured workers. In other words, we attribute significance to the General Assembly's choice to designate the relevant provisions as section 2302(b) with subsections (b)(1) and (b)(2) rather than to designate them as sister sections 2302(b), (c), and (d).

The General Assembly's use of the term "provided that" at the end of section 2302(b) supports this interpretation. The term "provided that" implies that what follows merely clarifies a general rule, rather than drastically changes the framework. Had the General Assembly desired section 2302(b) to apply only to those workers employed for more than 6 months and subsections (b)(1) or (b)(2) to apply only to those workers employed for less than 6 months, then we would have expected the General Assembly to have used terminology like "however," or "but." Instead, they chose "provided that." This choice implies that while the General Assembly intended for subsections (b)(1) or (b)(2) to apply to some particular subset of employees already within the ambit of section (b), they did not mean to classify employees into the different subsections on the basis of employment tenure.

Because the General Assembly's chosen text signals that they did not intend to calculate average weekly wage values differently for different workers on the basis of employment tenure, Diamond State's proffered interpretation—which interprets "worked" in subsection (b)(1) to mean "was employed"—is incorrect. Moreover, the statutory text affirmatively supports Taylor's proffered interpretation—that "worked" in subsection (b)(1) means "work actually performed." For example, near the end of subsection (b)(1), the General Assembly explains that where an injured

---

**12.** *Dewey Beach Enters., Inc.,* 1 A.3d at 307 (quoting *Oceanport Indus.,* 636 A.2d at 900); *Bay Surgical Servs.,* 900 A.2d at 652.

**13.** *Dewey Beach Enters., Inc.,* 1 A.3d at 307 (quoting *Oceanport Indus., Inc.,* 636 A.2d at 900).

employee has "worked" less than 26 but at least 13 weeks, that employee's "average weekly wage" is the employee's total wages earned over the 26 week period preceding the injury divided by the number of weeks "actually worked." In this context, the word "actually" has a common meaning which implies the actual physical performance of work. Any alternative definition of "actually" in this context strains the common understanding of the word.[14]

Given the statute's subdivided structure, its use of the term "provided that," and of the clarifying word "actually," Taylor's proffered interpretation is appropriate. Ultimately, the statute establishes a logical mechanism to calculate the average weekly wage for any injured employee. Specifically, it instructs that an employee's average weekly wage must be calculated: (i) pursuant to section 2302(b) if that employee performed work during all 26 of the 26 weeks preceding the injury; (ii) pursuant to subsection 2302(b)(1) if that employee performed work during at least 13 but less than 26 of the 26 weeks preceding his injury; and (iii) pursuant to subsection 2302(b)(2) if that employee performed work during less than 13 of the 26 weeks preceding his injury.

The Superior Court rejected this interpretation on two primary grounds. First, the Superior Court construed the language of subsection (b)(2) such that "before completing that employee's first 13 weeks" meant that subsection (b)(2) could only apply to employees with less than 13 weeks of employment. As we concluded above, the General Assembly did not intend to classify injured employees according to their employment tenure. Rather, the "first 13 weeks" language is merely a reference—albeit an inartful one—back to subsection (b)(1). In other words, subsection (b)(2) applies to those employees injured before completing their "first" 13 weeks of work within the 26 week period preceding their injuries, subsection (b)(1) applies to those employees injured before completing their "second" 13 weeks of work within that 26 week period, and section (b) applies to those employees who performed work each week across the entire period. This interpretation best harmonizes the rest of the statutory text and the overall statutory structure.

Second, the Superior Court and the IAB rejected Taylor's interpretation on the basis that it would lead to a "windfall" for Taylor. This argument posits that the $788.12 resultant average weekly wage under Taylor's interpretation may represent a truly "average" wage during the weeks Taylor actually performed work, but ignores the fact that she did not perform work every week. The "windfall" really arises from the fact that she would receive workers' compensation based on the average weekly wage *every week* she actually worked, despite the fact that her previous compensation was "sporadic." It is true that Taylor will receive compensation based on $788.12 on a weekly basis while not working and in that respect stands to receive more total income during the next 26 weeks than during the 26 weeks preceding her injury. This differential does not constitute a windfall, however, because it represents Taylor's earning capacity rather than her actual income. As noted, one of the reasons for Taylor's "sporadic" work schedule before her accident was the lack

---

14. For example, the sentence "Our law clerks actually worked for us last Saturday," in common American English, implies that our law clerks performed work for us last Saturday. It does not imply that our law clerks' names appeared on the Court's employee roster for last Saturday. To use that quoted language to imply the latter meaning would be to strain commonly understood American English.

of available work for her at Diamond State. Taylor, however, was capable and willing to work during some of those weeks when Diamond State had no work to offer. That means that Taylor's earning capacity in the 26 weeks before her injury was higher than the wages that she actually earned during that period. Because the workers' compensation statutes aim to compensate employees for lost earning capacity,[15] rather than actual lost wages, the differential in Taylor's case is not a "windfall," but an award consistent with the General Assembly's intended policy expressed in the statute.

## III. CONCLUSION

The competing interpretations of 19 *Del. C.* § 2302(b) and of its attendant subsections (b)(1) and (b)(2) in this case are both beguiling. That suggests to us that the General Assembly may never have contemplated a factual circumstance quite like Taylor's when it amended the text of section 2302(b) in 2007. But, whether they did or did not contemplate such a circumstance, it is now clear that clarifying statutory language could more clearly articulate the legislature's actual intent regarding how to calculate an injured employee's average weekly wage. In our constitutional system, this Court's role is to interpret the statutory language that the General Assembly actually adopts, even if unclear and explain what we ascertain to be the legislative intent without rewriting the statute to fit a particular policy position.[16]

Because the current text is (anomalously) "clearly ambiguous," we invite the General Assembly to articulate more clearly its desired intent, should it determine that we have misinterpreted that intent in this case. The structure of the relevant provisions, the General Assembly's use of "provided that" and "actually," and the confirmed legislative intent of the workers' compensation regime to compensate injured employees for lost earning capacity, all demonstrate that Taylor's proffered interpretation is the better of the two presented to us. Consequently, "worked" in subsection (b)(1) means the time that the employee "performed work" or "actually worked." Because Taylor was a 12 year employee of Diamond State but had only performed work during 16 of the 26 weeks preceding her injury, subsection 2302(b)(1) applies to calculate her average weekly wage. We therefore reverse the judgment of the Superior Court and remand for the Superior Court to enter judgment accordingly.

---

**15.** *See Howell*, 340 A.2d at 836.

**16.** *See State Farm Mut. Auto Ins. v. Patterson*, 7 A.3d 454, 465 (Del.2010) (Steele, C.J. and Jacobs, J., dissenting).