IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

JERRY CROUSE                    :
     Appellant,               :       C.A. No. S14A-12-002 RFS
                               :
         v.                :
                               :
HY-POINT DAIRY FARMS, INC.     :
     Appellee.                :


Submitted: April 7, 2015

Decided: July 22, 2015


ORDER

*Upon an Appeal from the Decision of the Industrial Accident Board.* **Affirmed.**


Nicole M. Evans, Esquire, The Law Offices of Andrea G. Green, 28412 Dupont Boulevard, Suite 104, Millsboro, Delaware,19966, Attorney for Appellant.

Andrew J. Carmine, Esquire, Elzufon Austin Tarlov & Mondell, P.A., 300 Delaware Avenue, Suite 1700 P.O. Box 1630, Wilmington, Delaware, 19899 Attorney for Appellee.


Stokes, J.

Before the Court is an appeal from the Industrial Accident Board ("IAB"), brought by Jerry Crouse ("Appellant"). Appellant seeks to reverse IAB's determination that calculated workers' compensations rates for injuries Claimant sustained while employed by Hy-Point Dairy Farms, Inc. ("Employer").

Appellant asserts IAB erred by excluding the amount of partial disability payments received and utilizing figures not supported by substantial evidence on the record to compute the compensation rates due. IAB and Employer maintain IAB properly excluded Appellant's partial disability payments from the workers' compensation rate equation and employed accurate figures based on the evidence of record yielding calculations that were free from legal error.

The Court has reviewed the record, and submissions by the parties and **AFFIRMS** the decision of IAB for the reasons set forth therein.

## PROCEDURAL BACKGROUND

Appellants sustained two injuries while working for Employer.[1] Following the second injury, Employer paid for Appellant's medical treatment and lost wages in the form of total disability benefits.[2]

The parties agree Appellant was entitled to workers' compensation benefits,

---

[1]Appellant's Opening Br. at 1-2.

[2]Appellee's Answering Br. at 1.

but disagree as to the amount owed.[3]  On September 17, 2014, Appellant filed a Motion with IAB contesting the compensation rate.[4]  Both parties agree that the gross wages earned by Appellant for work performed during the twenty-six week period is $15,054.74, but Appellant contends the average weekly wage ("AWW") calculation incorrectly excluded partial disability payments.[5]

On October 29, 2014, IAB held a hearing regarding the disputed AWW and the following contentions for IAB's consideration were submitted.[6]  Appellant contends the language of AWW is ambiguous.[7]  To that effect, Appellant claims: (1) the weeks considered should be the weeks actually worked, not the total twenty-six weeks, and (2) partial disability payments received as part of workers' compensation benefits should be included in the AWW calculation.[8]  According to Appellant, the amount of partial disability received, $1,739.41, should be added to the earned wages, and then this amount should be divided by a total of twenty-two weeks, not twenty-six

---

[3] *Id.*

[4]*Id.*

[5]*Id.* at n.1; n.3.; Appellant's Opening Br. at 5-6..

[6]Appellee's Answering Br. at 3; Appellant's Opening Br. at 1-2.; *see also,* Industrial Accident Board Tr.

[7]19 *Del. C.* § 2302*;* Appellant's Opening Br. at 10.

[8]*See generally,* Appellant's Opening Br.

weeks.[9] Appellant's calculations yielded an AWW of $763.37 and a compensation rate of $508.91.[10]

Conversely, Employer asserts Section 2302 is unambiguous and should be interpreted according to the plain meaning of the statute.[11] Employer states "the law provided no basis for adding any of his workers' compensation benefits to his 'wage' total."[12] Employer calculated the compensation rate without including the partial disability payments but adding in vacation pay.[13] Employer submits the rate should be derived by adding together the wages earned, $15,054.74, and the vacation pay, $625.00.[14] Next, Employer contends in order to "fairly and accurately" calculate AWW, the total wages earned should be divided by twenty-six weeks, as opposed to twenty-two weeks.[15] Employer's calculations yielded an AWW of $603.07, and a compensation rate of $420.05.[16]

---

[9]Appellee's Answering Br. at 20-23.

[10]*Id.* at 2.

[11]*Id.* at 2; 10.

[12]Appellee's Answering Br. 2.

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]*Id.*

On November 24, 2014, IAB made the following determinations: (1) the proper divisor is the number of weeks actually worked, and (2) workers' compensation benefits, such as partial disability payments, are not included in the total wages earned.[17] In this case, IAB determined the partial disability Appellant received, $1,739.41, should not be added to the earned wages, and the total wages earned should be divided by twenty-two weeks reflecting the number of weeks Appellant actually worked.[18] As such, IAB determined the AWW by utilizing the total wages earned, without including compensation received for disability or vacation pay, over the twenty-six week period preceding the accident, $15,054.74, and divided by twenty-two.[19] Thus, by IAB's calculations, Appellants' AWW is $684.31, yielding a compensation rate of $456.21.[20]

Appellant timely appealed IAB's decision to exclude the partial disability payments from the AWW calculation on December 23, 2014.[21] To that effect, Appellant filed an Opening Brief on February 13, 2015 seeking reversal of IAB's

---

[17]Appellee's Answering Br. at 2; *see also, Crouse v. Hy-Point Dairy Farms, Nos.* 1411480, at 7 (Del. I.A.B. Nov. 24, 2014).

[18]Appellee's Answering Br. at 2; *see also, Crouse,* IAB 1411480 at 7.

[19]Appellee's Answering Br. at 2; *see also, Crouse,* IAB 1411480 at 7.

[20]Appellee's Answering Br. at 2; *see also, Crouse,* IAB 1411480 at 7.

[21]Appellee's Answering Br. at 3.

4

decision.[22] On March 19, 2015, Employer responded by answering brief noting their non-objection to the divisor of twenty-two and requesting this Court to affirm IAB's decision as to the exclusion of partial disability payments.[23]

## STATEMENT OF FACTS

The facts in this case are not in dispute.[24] Appellant has been employed by Employer for over twenty years as a driver and salesman. Appellant sustained an injury while working for Employer on August 26, 2013 ("initial injury"). Following the initial injury, Appellant received partial and total disability due to physical restrictions that prevented Appellant from working his regular job. When Employer was unable to offer light-duty work, Appellant was entitled to total disability benefits and full compensation pursuant to an agreement with Employer's prior workers' compensation benefits carrier. When it was feasible, Appellant worked light-duty to accommodate Appellant's physical restrictions. Appellant earned a reduced wage and was entitled to partial disability benefits for the weeks he worked light-duty. On November 25, 2013, Appellant resumed working full-time and full-duty upon release

---

[22]*See generally,* Appellant's Opening Br.

[23]*See generally,* Appellee's Answering Br.

[24]Recitation of the facts is adopted primarily from the Board's decision. *Crouse,* IAB 1411480 at 3-7. The facts were also cross-referenced with the parties submissions. Appellant's Opening Br.; Appellee's Answering Br.

by his treating Doctor.

On March 4, 2014, Appellant suffered a second work injury ("second injury") when he fell off the back of his truck. Appellant's second injury resulted in a concussion and injuries to ribs, lungs, right leg, and right shoulder. As a result of this accident, Appellant was restricted from all work. At the time of the second injury, Appellant's base salary was $125.00 per day, which calculates to $625.00 per week, and monthly commissions.

During the twenty-six weeks preceding the second injury, Appellant received total disability for three weeks, earning full compensation for those three weeks; received eight weeks of partial disability benefits, in the amount of $1,739.41; one week of vacation pay, $625; and wages for fourteen weeks of full-duty, at a rate of $625 per week.

## STANDARD OF REVIEW

On appeal from the Industrial Accident Board, this Court's role is to determine whether substantial evidence exists to support the Board's decision, and to examine the Board's findings and conclusions for legal error.[25] Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to

---

[25]*Harasika v. State*, 2013 WL 1411233, at *3 (Del. Super. Feb. 28, 2013).

6

support a conclusion,"[26] and is "more than a mere scintilla but less than a preponderance."[27] This Court reviews legal determinations of the Board *de novo*.[28] The interpretation of the terms of a settlement agreement is reviewed for an error of law.[29]

## DISCUSSION

*Calculating the AWW*

A claimant's benefits, including the AWW, for a work-related injury are calculated in accordance with Delaware's Workers' Compensation Act ("Act").[30] Under the statute, AWW is defined in part as meaning the "weekly wage earned by the employee at the time of the employee's injury at the job in which the employee was injured, including overtime pay, gratuities and regularly paid bonuses (other than an employer's gratuity or holiday bonuses) but excluding all fringe or other in-kind

---

[26]*Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[27]*Kiefer v. Nanticoke Health Servs.*, 979 A.2d 1111 (Del. 2009).

[28]*Bundy v. Corrado Bros.*, 1998 WL 283460, at *2 (Del. Mar. 25, 1998).

[29]*Chavez v. David's Bridal*, 979 A.2d 1129, 1133 (Del. 2008).

[30]19 *Del. C.* § 2302.

employment benefits."[31]

Further, Section 2302(b) provides a detailed statutory scheme describing how workers' compensation rates are to be calculated.[32] According to Section 2302(b), if an employee has worked at the same job for at least twenty-six weeks, then the AWW is calculated "by computing the total wages paid to the employee during the twenty-six weeks immediately preceding the date of injury and dividing by twenty-six."[33] Alternatively, if an employee has worked less than twenty-six weeks but at least thirteen weeks, the AWW is calculated by taking "the total wage earned by the employee in the employment in which the employee was injured, divided by the total number of weeks actually worked in that employment."[34] Lastly, employees injured prior to completing the first thirteen weeks of employment are compensated a number of different ways. Specifically, the Code states the following:

> If an employee sustains a compensable injury before completing that employee's first 13 weeks, the average weekly wage shall be calculated as follows:
>
> 1. a. If the contract was based on hours worked, by determining the number of

---

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

hours for each week contracted for by the employee multiplied by the employee's hourly rate;

b. If the contract was based on a weekly wage, by determining the weekly salary contracted for by the employee; or

c. If the contract was based on a monthly salary, by multiplying the monthly salary by 12 and dividing that figure by 52; and

d. If the hourly rate of earnings of the employee cannot be ascertained, or if the pay has not been designated for the work required, the average weekly wage, for the purpose of calculating compensation, shall be taken to be the average weekly wage for similar services performed by other employees in like employment for the past 26 weeks.[35]

Therefore, AWW equations change in correlation with the length of employment, and weeks actually worked.

*Whether IAB Erred By Employing the AWW Equation Utilizing the Total*

*Number of Weeks Actually Worked as the Divisor*

Initially, the parties disputed the proper divisor for the AWW formula. Employer asserted the divisor should be twenty-six because Appellant has been employed with the Employer for over twenty years. Alternatively, Appellant disagreed contending the divisor should reflect the number of weeks actually worked, twenty-two. Employer's brief acknowledges Delaware Supreme Court precedent is instructive and does not seek to appeal IAB's decision to implement a divisor based

---

[35]*Id.*

on the number of weeks actually worked.[36] Hence, the parties effectively agree the proper method of calculating Appellant's AWW is to take the total wage earned by the employee in the employment in which the employee was injured, divided by the total number of weeks actually worked in that employment. Notwithstanding this admission, the Court will review the merits of IAB's decision to implement a divisor based on the number of weeks actually worked.

The Delaware Supreme Court addressed the application of Section 2302(b) in *Taylor v. Diamond State Port Corp.*[37] In *Taylor*, the claimant was employed by employer for over a decade, but only performed work for sixteen of the twenty-six weeks prior to the work injury.[38] The employer in *Taylor* asserted the plain language of the statute required the claimant's earnings must be divided by twenty-six because she was employed with the employer for longer than twenty-six weeks.[39] The Court determined, however, the legislature intended only to include weeks where an

---

[36] *See,* Appellee's Answering Br. at n. 3 (stating "[w]hile Hy-Point argued against the application of the Taylor decision to the present case before the Board, that argument is not being raised on appeal and Hy-Point accepts the Board's findings that the Supreme Court's decision is instructive for purposes of determining the divisor to be used in the formula establish by § 2302(b)(1)").

[37] 14 A.3d 536, 542 (Del. 2011).

[38] *Id.* at 537.

[39] *Id.*

employee actually earned wages in the calculation of an average wage.[40] Thus, if an employee did not work during one of the twenty-six weeks, there were no earned wages for that week to base compensation due.[41] As such, the Court concluded claimant's divisor for AWW was sixteen, not twenty-six, because the employee only actually worked for sixteen of the twenty-six weeks notwithstanding the claimant's total length of employment with the employer.[42]

The proper method for calculating the AWW consistent with Code requirements and judicial precedent is to calculate the divisor based on the weeks actually worked, not earning capacity, when an employee did not work the full twenty-six weeks preceding an injury and has been employed for longer than twenty-six weeks.[43] Here, the IAB correctly utilized a divisor that reflected the weeks Appellant actually worked because IAB determined actually worked means work actually performed.

In this case, Appellant actually worked for twenty-two out of the twenty-six weeks prior to his injury and was absent from work for four weeks. Three of the four

---

[40]*Id.* at 542.

[41]*Id.*

[42]*Id.*

[43]*Id.*

11

weeks Appellant was out on total disability; the remaining week Appellant was on vacation. Twenty-six weeks minus the four weeks absence yields twenty-two weeks actually worked. Accordingly, twenty-two is the proper divisor and IAB's decision correctly implemented twenty-two as a divisor based on the substantial evidence on the record.

Therefore, this Court also concludes IAB's determination to utilize a divisor reflecting the number of weeks actually worked was proper and the divisor of twenty-two in this case was supported by substantial evidence on the record

*Whether IAB Erred By Excluding Partial Disability Payments From the*

*AWW Calculation*

The remaining point of contention is whether IAB erred by utilizing the gross wages earned by Appellant and excluding partial disability payments for the purposes of AWW calculations. Appellant asserts the term wages is ambiguous and should include partial disability payments because the compensation rates ought to be representative of earning capacity, not the actual wages earned. Conversely, Employer submits the statute is not ambiguous as to the definition of wages or how to calculate AWW. Employer asserts IAB's exclusion of partial disability benefits from the AWW calculation was proper.

12

When reviewing a question of statutory interpretation, the first step in the analysis is to determine whether the statute is ambiguous. As the Delaware Supreme Court explains:

> [a]t the outset, a court must determine whether the provision in question is ambiguous. Ambiguity exists when a statute is capable of being reasonably interpreted in two or more different senses. If the statute is unambiguous, then there is no room for judicial interpretation and the plain meaning of the statutory language controls. If it is ambiguous, we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious whole.[44]

Turning to the Code itself, Section 2302(a) states:

> "Average weekly wage" means the weekly wage earned by the employee at the time of the employee's injury at the job in which the employee was injured, including overtime pay, gratuities and regularly paid bonuses (other than an employer's gratuity or holiday bonuses) but excluding all fringe or other in-kind employment benefits. The term "average weekly wage" shall include the reasonable value of board, rent, housing or lodging received from the employer, which shall be fixed and determined from the facts in each particular case.[45]

Thus, this Court is tasked to determine whether the term wage in this context is ambiguous, and whether partial disability benefits should be included in addition to gross wages earned when calculating an employee's AWW.

In *Taylor,* the Delaware Supreme Court determined the statute at issue was

---

[44]*Doroshow, Pasquale, Krawitz & Bhaya v. Nanicoke Mem'l Hosp., Inc.,* 36 A. 3d 336, 342-43 (Del. 2012) (internal quotations omitted).

[45]19 *Del. C.* § 2302.

13

ambiguous as to "the proper interpretation of the word 'worked' in section 2302(b)(1)."[46] Based on this finding of ambiguity, Appellant asserts the statute is ambiguous as to the term wages and as a whole. A finding of ambiguity in a statute does not necessarily render a statute as a whole ambiguous. A statute can be ambiguous in whole or in part. In *Taylor*, the Delaware Supreme Court did not address Section 2302(a), or the term wages. Thus, the term wages or the statute as a whole is not ambiguous because the term worked was found to be ambiguous.

Also, it is important to acknowledge the statute at issue was amended, in part, to specifically define the term wages as applied to AWW and to resolve ambiguities.[47] The term wage is an unambiguous term as utilized in the statute because it is only subject to one reasonable interpretation–the weekly wage earned by the employee at the time of the injury including the amount of room and board, if applicable excluding benefits. "It is well established rule of statutory interpretation that the law favors rational and sensible construction."[48] Here, the law was constructed in a manner that defines what is included in wages and what is excluded. It would be illogical for this Court to determine a benefit, such as a lost wage benefit, is included in the concept

[46]*Taylor,* 14 A.3d at 539.

[47]On January 7, 2007, the General Assembly amended Section 2302. *Compare* 19 *Del. C.* §2302 (1955), *with* 19 *Del. C*. §2302 (2007*).*

[48] *Nanticoke Mem'l Hosp., Inc.,* A. 3d at 343.

14

of wages for the purposes of an AWW calculation when wages are expressly defined and benefits are omitted.

The term wages is defined by a specific list that includes overtime pay, gratuities, regularly paid bonuses, and room and board. This list indicates wages for AWW seek to compensate an injured employee on the basis of work that was actually performed and housing, if housing is contemplated as a part of the employer-employee relationship. Based on the absence of the lost wage benefits from this list of what constitutes wages, the only reasonable interpretation consistent with the Code is that lost wage benefits are not considered to be a part of wages.

Next, Appellant seeks a finding from this Court that partial disability payments are included in AWW calculations because lost wage benefits are not expressly listed as an exclusion. It is true Section 2302 does not expressly exclude lost wage benefits.[49] Yet, it is also true that the statute does not expressly or impliedly include partial disability benefits in the calculation of AWW. As noted above, the Act defines wages.[50] Wages, as defined by statute, consist of earnings by the employee for work performed, including gratuities earned, but do not include "fringe" and other

---

[49] 19 *Del. C.* § 2302.

[50] *Id.*

15

"in-kind employment benefits."[51] Later, in separate sections, lost wage benefits are described in detail, including the formulas to calculate lost wage benefits.[52] The General Assembly, if it desired, could have defined AWW to be calculated by first combining gross earnings and lost wage benefits, if any. It did not.

There is no evidence the omission of lost wage benefits from the calculation was a result of the General Assembly's failure to contemplate a scenario in which an employee was simultaneously receiving wages and benefits, such as lost benefit wages, as Appellant suggests. Rather, when "provisions are expressly included in one part of a statute, but omitted from another, it is reasonable to conclude that the legislature was aware of the omission and intended it." [53]

The General Assembly carefully crafted and amended the workers' compensation statutory scheme. Throughout the Act, the Legislature distinctly references earnings and benefits as separate values. The inclusion of benefits in certain provisions but not others in conjunction with the defined distinctions between wages and benefits, signifies it was the intention of the General Assembly to omit benefits, including lost wage benefits, from AWW calculations. "The courts may not

[51]*Id.*

[52]19 *Del. C.* §§ 2324-2325.

[53]*Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982).

16

engraft upon a statute language which has been clearly excluded therefrom by the Legislature."[54] After reviewing the statute as a whole, it is clear to the Court there is a distinction between earnings and benefits and this distinction precludes partial disability benefits from being engrafted upon the statute to be considered in addition to gross wages earned for the purpose of AWW calculations.

Moreover, in an analogous case, IAB held the AWW should reflect the amount of actual work performed–the rate at the time of the accident–as opposed to earning capacity when the claimant sustained two successive injuries. In *Carmel Sarne v. Delaware Supermarkets*, a claimant was working light-duty following an initial injury.[55] Upon the second injury, claimant was awarded a lesser AWW.[56] The claimant sought to be paid the former AWW rate prior to the second injury.[57] IAB concluded the employer should not be responsible for paying a higher AWW rate because the claimant must be paid at the rate at the time of the accident for actual work performed in accordance with the statute.[58]

---

[54]*Id.*

[55]*Carmel Sarne v. Delaware Supermarkets, Nos.1379438 & 1380625 (Del. I.A.B.* April 17, 2014).

[56]*Id.*

[57]*Id.*

[58]*Id.*

Likewise, Appellant should be compensated at a rate that reflects the amount of actual work performed. The inclusion of partial disability payments in the AWW calculation is improper because partial disability payments compensate for work an employee was unable to perform. In this case, IAB correctly calculated the compensation rate based on the amount Appellant actually earned, not the amount that could have been earned, by excluding compensation for work the employee did not perform.

Lastly, the Court declines the opportunity to disregard the plain meaning of the statute in favor of Appellant's allusion to the global purpose of workers' compensation benefits. Appellant maintains the compensation rates ought to be representative of his earning capacity, not the actual wages earned in accordance with the holding in *Taylor*.[59] In *Taylor*, the Delaware Supreme Court noted that Delaware's General Assembly intended employees be compensated for lost earning capacity and not actual earnings.[60]

Merely asserting an overarching principle is insufficient to warrant construing a statute through an exercise of mental gymnastics when the language is clear. The *Taylor* opinion itself reads: "[i]n our constitutional system, this Court's role is to

[59]*Taylor,* 14 A.3d at 540-541.

[60]*Id.*

18

interpret the statutory language that the General Assembly actually adopts, even if unclear and explain what we ascertain to be the legislative intent without rewriting the statute to fit a particular policy position."[61]  Here, the exclusion of benefits from gross wages is clear.  Therefore, there is not a need to ascertain legislative intent.

Further, the record contains a sufficient degree of evidence to warrant a finding that Appellant was not entitled to include partial disability benefits in the calculation of AWW based on the plain meaning of the statute.  If the plain language of the statute does not support the result Appellant seeks, the proper remedy is solely for the General Assembly to consider.

In sum, IAB possessed a firm basis for determining the term wages, as utilized in the statute, was unambiguous.  Further, IAB did not commit an error of law by utilizing a divisor of twenty-two or excluding partial disability payments from the AWW calculation.  IAB properly employed the AWW equation in this case in accordance with the plain meaning of the statute, and the decision is supported by substantial evidence on the record.

[61]*Id.*

19

## CONCLUSION

Considering the foregoing, the Board's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

*/s/ Richard F. Stokes*

_____

Richard F. Stokes, Judge