# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRIAN RAY AND MICHELLE ) 
RAY, ) 
On behalf of M.R. ) 
       Appellant, ) 
                    )   C.A. No.: N20A-09-001-VLM 
     v. ) 
                    ) 
STATE OF DELAWARE HUMAN ) 
RELATIONS COMMISSION, and ) 
DELAWARE DEPARTMENT OF ) 
STATE, DIVISION OF HUMAN ) 
RELATIONS, and MEDEXPRESS ) 
URGENT CARE, INC. ) 

       Appellees.

## MEMORANDUM OPINION

Submitted: November 4, 2021
Decided: November 22, 2021
*Upon Consideration of Appellant's Appeal from*
*Decision of State Human Relations Commission,*

## REVERSED and REMANDED.

Anthony M. Sierzega, Esquire, Community Legal Aid Society, Wilmington, Delaware. Attorney for Appellants.

David C. Mulveny, Esquire, and Kemba S. Lydia-Moore, Esquire, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Attorneys for Appellees State of Delaware.

Maria R. Granaudo Gesty, Esquire, Wilmington, Delaware. Attorney for Appellee Medexpress Urgent Care, Inc.


**MEDINILLA, J.**

# I. INTRODUCTION

Appellant ("M.R.") sought to participate in the 2019 Special Olympics. As is required of all athletes, he needed to pass a sports physical examination and went to a local medical center that offered this medical service. The medical center determined that due to his difficulty verbalizing oral responses during the vision portion of the physical exam, he failed the vision test. The center elected not to administer the remaining tests and M.R. did not pass the sports physical exam.

After an allegedly upsetting comment was also made to him and his family about his diagnosis of Down Syndrome, the young athlete asked for an opportunity to be heard by the Delaware Human Relations Commission (the "Commission") on whether a discriminatory practice had been committed under the Delaware Equal Accommodations Law ("DEAL"). His Complaint was dismissed after the Commission determined that a place of public accommodation is not required to make reasonable accommodations based on disability under 6 *Del. C.* § 4504(a). He filed this appeal. For the reasons set forth below, upon consideration of the submissions of the parties and the record in this case, the Commission's decision is **REVERSED** and **REMANDED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 2019, then fifteen-year-old M.R. went to the MedExpress on Concord Pike in Wilmington with his mother and sister to undergo a required physical examination in order to participate in the 2019 Special Olympics.[1] After MedExpress took payment for the service,[2] a nurse practitioner employed by MedExpress began to conduct the vision portion of the physical exam.

M.R. is diagnosed with Down Syndrome and apraxia of speech.[3] This latter speech disorder made it difficult for him to verbalize his responses during the visual examination and the employee did not complete the test.[4] A physician entered the examination room thereafter and informed M.R. and his family that M.R. could not pass the physical examination because he failed the vision test.[5] This news was followed by an allegedly upsetting comment from the physician that M.R. "had Down Syndrome" and the rest of the physical examination was not completed.[6] At

---

[1] Equal Accommodations Complaint Attachment 6a [hereinafter Complaint].

[2] *See id.* (noting receipt of a refund when leaving MedExpress).

[3] "Apraxia of speech (AOS)—also known as acquired apraxia of speech, verbal apraxia, or childhood apraxia of speech (CAS) when diagnosed in children—is a speech sound disorder. Someone with AOS has trouble saying what he or she wants to say correctly and consistently. AOS is a neurological disorder that affects the brain pathways involved in planning the sequence of movements involved in producing speech. The brain knows what it wants to say, but cannot properly plan and sequence the required speech sound movements." *Apraxia of Speech*, NATIONAL INSTITUTE ON DEAFNESS AND OTHER COMMUNICATION DISORDERS (Oct. 31, 2017), https://www.nidcd.nih.gov/health/apraxia-speech.

[4] Complaint.

[5] *Id.*

[6] *Id.*

his mother's request, M.R. received a refund.[7]   Following the appointment, his father, Brian Ray, contacted MedExpress's corporate office to understand the grievance procedure.  It is alleged he was told by a MedExpress employee, "[C]ome on, we both know that they should not have done that."[8]

On May 16, 2019, with the assistance of counsel and acting on his behalf, Guardians Brian and Michelle Ray (the "Rays") filed his Complaint with the State of Delaware Human Relations Commission (the "Commission").  Specifically, they filed their claims with the Division of Human Relations (the "Division") against MedExpress alleging violations of the Delaware Equal Accommodations Law ("DEAL") under 6 *Del. C.* § 4500 *et seq.*[9]  The Rays alleged that MedExpress denied M.R. access to a public accommodation on the basis of his mental disability, namely that he was not given a reasonable accommodation in the form of communication assistance during the visual examination.[10] A second claim included that "[w]hile discussing the failed examination" a MedExpress employee made an upsetting comment that M.R. "had Down Syndrome."[11]

---

[7] *Id.*
[8] *Id.*
[9] Appellant's Opening Brief, D.I. 9, at 1 [hereinafter Opening Brief].
[10] *See* Complaint.
[11] *Id.*

On August 23, 2019, the Director of the Division made a recommendation to the Commission that the Complaint be dismissed for failure to state a claim (the "Application") because it did not allege facts that stated a violation of the law.[12]  A Response to the Application was filed by the Rays requesting that the Chairperson of the Commission (the "Chairperson") deny the Application.[13]

On February 24, 2020, the Chairperson ruled on behalf of the Commission.[14] She found against M.R. in a vague one-line "Final Order of Dismissal" that dismissed the Complaint because it "fails to state a claim upon which relief is available . . . *because the complaint does not state a claim for which relief is available*."[15]  The Rays filed a timely Request for Reconsideration of the Final Order.[16]

On July 16, 2020, the Chairperson again—acting on behalf of the Commission—issued an Order of Dismissal Following Request for Reconsideration (the "Commission's Order") and again determined that M.R.'s Complaint failed to state a claim upon which relief is available.  This time, the Complaint was dismissed

---

[12] *See* Application for Dismissal of the Complaint.

[13] *See* Response to Application for Dismissal of the Complaint, at 1.

[14] The Commission Chairperson may consider an application for dismissal in lieu of a panel.  *See* 1 Del. Admin. C. § 601-5.1.5.8.

[15] Order of Dismissal.

[16] *See* Request for Reconsideration of the Final Order of Dismissal.

with a ruling that DEAL requires "a 'reasonable accommodation' may be made . . . based on gender identity only."[17]

On September 11, 2020, the Rays filed this appeal.[18] Appellees, the Commission and the Division (collectively the "State") filed their Response on June 21, 2021. MedExpress joined the State's filing on June 24, 2021. The matter was assigned to this Court on August 23rd and the Court requested oral arguments, which were heard on November 4, 2021. Upon consideration of the pleadings, the matter is ripe for decision.

## III.   STANDARD OF REVIEW

On an appeal from the Commission, this Court must determine whether the Commission's decision is supported by substantial evidence and the conclusions are free from legal error.[19] Questions of law are reviewed *de novo*.[20] Where the Commission dismissed M.R.'s Complaint as a matter of law, this review is *de novo*.

---

[17] Order of Dismissal Following Request for Reconsideration, at 2.

[18] *See* 6 *Del. C.* §4511; 29 *Del. C.* §10142; 1 Del. Admin. C. § 601-5.1.10 (granting the Superior Court jurisdiction over appeals from the Commission's decisions).

[19] *Quaker Hill Place v. State Human Relations Comm'n*, 498 A.2d 175, 178 (Del. Super. 1985) (citing 29 *Del. C.* §§ 10142, 10161(5)).

[20] *Boscov's Dept. Store v. Jackson*, 2007 WL 542159, at *9 (Del. Super. Feb. 12, 2007) (citing *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)).

## IV.  PARTY CONTENTIONS

M.R. contends it was legal error for the Commission to determine that his Complaint failed to state a claim upon which relief is available where the facts asserted therein satisfied the elements of a *prima facie* case of discrimination.[21] Both the State and MedExpress request the Court affirm the decision below, arguing a *de novo* review supports the conclusion that the ruling is free from legal error.[22]  I disagree.

## V.  DISCUSSION

Delaware law prohibits discrimination based on disability.  Statutory safeguards against such discriminatory practices are set out in Chapter 45, Title 6 of the Delaware Code, entitled Equal Accommodations, and known as the Delaware Equal Accommodations Law or DEAL.[23]  The primary purpose of DEAL is to eliminate "'the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'"[24]  It is undisputed that MedExpress is a place of public accommodation that may not "directly or indirectly

---

[21] *See* Opening Brief, at 7.

[22] *See* Appellee's Answering Brief, D.I. 11, at 4–10; Letter from MedExpress Joining the Appellee's Answering Brief.

[23] *See* 6 *Del. C.* § 4500 *et seq.*

[24] *Stewart v. Human Relations Comm'n*, 2010 WL 2653453, at *3 (Del. Super. July 6, 2010), *aff'd sub nom. Boggerty v. Stewart*, 14 A.3d 542 (Del. 2011) (quoting *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969) (quoting H.R.Rep. No. 914, 88th Cong., 1st Sess., 18).

refuse, withhold from, or deny to any person. . . any of the *accommodations, facilities, advantages or privileges thereof.*"[25]

M.R. filed a Complaint against MedExpress alleging he was "aggrieved by a discriminatory public accommodation practice."[26] He did so by filling out a Complaint Form from the Commission that provides three options for an averment that asks:

(1) Were you refused, withheld or denied *accommodations*, facilities, advantages, or privileges of a place of public accommodation;

(2) Did the person against whom the complaint was filed directly or indirectly publish, issue, circulate, post or display any radio communication, notice or advertisement indicating that public accommodation in the classes listed in block No. 4 below is not welcomed, desired, or solicited; and

(3) Did someone assist, induce or coerce another person to commit any discriminatory public accommodations practice prohibited by Equal Accommodations Law?[27]

These three options on the Complaint Form mirror the statutory provisions under 6 *Del. C.* § 4504.[28] The Rays checked off option number one that references

---

[25] 6 *Del. C.* § 4504(a) (emphasis added).

[26] Opening Brief, at 1.

[27] Complaint Form.

[28] 6 *Del. C.* § 4504(a) reads "No person…may directly or indirectly refuse, withhold from, or deny to any person . . . any of the accommodations, facilities, advantages, or privileges thereof," mirrored in the first claim option on the Complaint Form. The second claim option follows the language under § 4504(b), "No person . . . shall directly or indirectly publish, issue, circulate, post, or display any written, typewritten, mimeographed, printed, television, Internet, or radio communication notice or advertisement to the effect that any of the accommodations, facilities, advantages and privileges of any place of public accommodation shall be refused [or] withheld." Finally, the third claim option follows the language under § 4504(c) which renders it "unlawful

"accommodations." Notably, the word "reasonable" is not found on the Complaint Form—only the term "accommodations." Thus, what prompted a review for dismissal appears to be based solely on the Rays' interjection of the word "reasonable" on their accompanying affidavit.[29]

## A. The Commission Failed to Consider All Allegations as True

MedExpress did not file an Answer.[30] Instead, the Division director sought to dismiss. Under Delaware law the Division director may recommend dismissal[31] "when . . . the facts alleged do not state a violation of the law."[32] The Commission may dismiss the claim if it agrees that the complaint does not state a claim for which relief is available.[33] The Commission must properly consider the application for dismissal such that it "consider[s] only the facts alleged in the pleadings or any related submissions and any reasonable inferences from those facts" and such alleged facts are "considered true for the purpose of the dismissal proceeding."[34]

---

to assist, induce, incite or coerce another person to commit any discriminatory public accommodations practice prohibited by subsection (a) or (b) of this section."

[29] *See* Complaint ("[M.R.] was not given a reasonable accommodation in the form of communication assistance during the visual examination.").

[30] Although not germane to this appeal, the record does not reflect that MedExpress filed a written response. *See* Complaint ("MedExpress has not followed up regarding the Complaint"); *see also* 1 *Del. Admin. C.* § 601-3.1 (noting that a respondent "shall file a written response…or a notice of intention to pursue no-fault settlement" within 20 days of receiving the complaint).

[31] *See* 6 *Del. C.* § 4508(c); 1 Del. Admin. C. § 601-5.1.5.2.

[32] 1 Del. Admin. C. § 601-5.1.5.2.

[33] 6 *Del. C.* § 4508(c).

[34] 1 Del. Admin. C. § 601-5.1.8.

Here, M.R.'s Complaint alleges two violations. First, that he was not given a "reasonable accommodation in the form of communication assistance during the visual examination" and that "[w]hile discussing the failed examination" a MedExpress employee made a discriminatory or hostile comment that M.R. had Down Syndrome.[35] M.R. alleges denied access to a public accommodation and that he was treated less favorably as a result of—*either or both*—the lack of communication assistance and the disparaging comment. Though the Commission fully explained its rationale for dismissal of the former, the Commission's Order says nothing about the latter.

Delaware courts have recognized three elements to establish a *prima facie* case for discrimination. These elements require a showing:

(1) that he is a member of a protected class;
(2) that he was denied access to a public accommodation; and
(3) that non-members of the protected class were treated more favorably.[36]

For the first element, it is undisputed that M.R. is a member of a protected class.[37] As to the second element, it is undisputed that MedExpress is a place of public accommodation and is subject to the prohibitions against discrimination under

---

[35] Complaint.

[36] *Hadfield's Seafood v. Rouser*, 2001 WL 1456795, at *3 (Del. Super. Aug. 17, 2001), *aff'd,* 2002 WL 384415 (Del. 2002) (quoting *Uncle Willie's Deli v. Whittington*, 1998 WL 960709, at *4 (Del. Super. Dec. 31, 1998)).

[37] This argument was never raised on appeal nor mentioned in the Commission's findings.

DEAL.[38]  Although MedExpress did assert at oral argument that the conduct in this matter was not a denial of service, it would seem that this question should be resolved upon further findings of the Commission.[39]

As to the third element, Delaware courts have adopted two methods of establishing disparate treatment.[40]  First, there is consideration of a traditional subpart of whether the aggrieved person "[was] deprived of services while similarly situated persons outside the protected class were not deprived of those services."[41] The court also considers whether "[he] received services in a markedly hostile manner and in a manner which a reasonable person would find objectively reasonable."[42]

As to the alleged comment, the record is absent any findings as to whether the MedExpress employee's conduct was scrutinized under any such factors to warrant dismissal.  The State conceded during oral arguments that the Commission's Order

---

[38] This argument was never raised on appeal nor mentioned in the Commission's findings.

[39] *See Stewart*, 2010 WL 2653453, at *6 ("While it is well-established that an outright denial of service is not necessary, there does not appear to be a precise legal rule which articulates what does or does not constitute a denial of access.  Such a question may be fact-intensive, depending upon the circumstances of a particular case.").

[40] *See id.* at *5; *Dover Downs, Inc. v. Lee*, 2012 WL 2370379, at *8 (Del. Super. 2012).

[41] *Rouser,* 2001 WL 1456795, at *3, *aff'd,* 2002 WL 384415 (Del. 2002).

[42] *Id.*; *see also Lee*, 2012 WL 2370379, at *9 (quoting *Callwood v. Dave & Busters, Inc.*, 98 F.Supp.2d 694, 708 (D. Md. 2000) (Establishing that the "markedly hostile" test requires the court to consider a variety of factors, including: "whether the conduct is so (1) profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) far outside of widely-accepted business norms; and (3) arbitrary on its face, that the conduct supports a rational inference of discrimination.").

is inexplicably silent regarding this allegation and perhaps it would have been reviewable under DEAL. Citing to case law, MedExpress took a different position, arguing instead that the comment alone would be insufficient to support a claim. Perhaps this is true. But the record is clear that the claim was not addressed. In so failing to consider these alleged facts as true or otherwise, this Court finds that the Commission violated its directive under 1 Del. Admin. C. § 601-5.1.8.[43] Thus it seems appropriate to remand for the Commission to address this allegation and conduct the proper analysis.

## B. The Commission Failed to Consider All Provisions Under DEAL

As to the primary claim relating to "reasonable accommodations," it appears that the Commission traveled past the general provision of DEAL before it lands on the "reasonable accommodations" language found in a situation-specific provision under 6 *Del. C.* § 4504(a)(2) that reads:

> *A place of public accommodation may provide reasonable accommodations based on gender identity* in areas where disrobing is likely, such as locker rooms or other changing facilities, which reasonable accommodations *may* include a separate or private place for the use of persons whose gender-related identity, appearance or expression is different from their assigned sex at birth, provided that such reasonable accommodations are not inconsistent with the gender-related identity of such persons.[44]

---

[43] *See* 1 Del. Admin. C. § 601-5.1.8.
[44] 6 *Del. C.* § 4504(a)(2) (emphasis added).

Focusing solely on this specific gender identity statute, the Commission determined that DEAL expressly limits considerations of "reasonable accommodations" for claims related only to gender-identity.[45] It deduces that the amendment's express use of the term "reasonable accommodations" precludes M.R.'s claims. Specifically, that "[b]ased on the clear wording of DEAL, a place of public accommodation is not required to make a reasonable accommodation on the basis of disability."[46] The Commission further concludes that "even if the wording of [§ 4504(a)(2)] was not clear and unambiguous, statutory construction mandates [dismissal] since the General Assembly chose to include a specific *requirement* for a reasonable accommodation based on gender identity but chose not to include the same requirement based on disability."[47]

The Commission traveled through the narrow rabbit hole of a specific and non-germane statute. Its journey then took several missteps that cannot be reconciled with the clear path set out in DEAL's roadmap. The Commission's myopic conclusions are incorrect for two reasons: First, the General Assembly did not include a specific requirement for a reasonable accommodation based on gender

---

[45] *See* Order of Dismissal Following Request for Reconsideration, at 3.
[46] *Id.* at 5.
[47] *Id.* at 5–6 (emphasis added).

identity.  Second, statutory construction mandates against dismissal, not in favor of it.

### 1.  *DEAL Does Not Mandate Reasonable Accommodations Under § 4504*

Rules of statutory interpretation are well-established under Delaware law.[48] A statute is ambiguous "if it is 'reasonably susceptible of two interpretations or if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature.'"[49] If the statute is not ambiguous, the Court should apply the plain meaning of the statutory term which is determined "by considering the term in a common or ordinary way."[50]

It is true that in 2013, the General Assembly amended DEAL to add its provision regarding reasonable accommodations and gender identity.[51]  The law speaks to specific situations when "disrobing is likely" and locker rooms or other changing facilities may be provided for persons whose gender-related identity, appearance or expression is different from their assigned sex at birth.  The law is wholly unrelated to the claims brought by the Rays.

---

[48] *See, e.g., Delaware Bd. of Nursing v. Gillepsie*, 41 A.3d 424, 427 (Del. 2012); *Dewey Beach Enters., Inc. v. Bd. of Adjustment of Dewey Beach*, 1 A.3d 305, 307 (Del. 2010).

[49] *Delaware Tech. and Cmty College v. State of Delaware Human Relations Comm'n*, 2017 WL 2180544, at *2 (Del. Super. May 17, 2017) (quoting *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011)).

[50] *See id.*

[51] *See* 79 *Del. Laws*, c.47, § 5 (2013).

More importantly, the law is permissive in nature. Twice it states that "[a] place of public accommodation *may* provide reasonable accommodations based on gender identity . . . which reasonable accommodations *may* include a separate or private place . . . ."[52]  Given this language, it is unclear how the Commission concludes that "…the General Assembly chose to include a specific *requirement* for a reasonable accommodation based on gender identity but chose not to include *the same requirement* based on disability."[53]

Focusing on what it believes was the legislative intent of both 2013 and 2014 General Assemblies, the Commission interprets the existence of a mandate that is neither expressed nor inferred in law.  And it further finds that the legislature "chose" not to add the "reasonable accommodations" language to disability "despite the provision . . . *requiring* the consideration of a reasonable accommodation based on gender identity."[54]  These conclusions are unfounded.

The gender-identity statute does not require nor mandate anything.  The plain meaning of the term "may" in the statute is clear.  Thus, any assertion by the Commission that 6 *Del. C.* § 4504(a)(2) *requires* a reasonable accommodation is incorrect.  This erroneous finding then bound the Commission to make another

---

[52] 6 *Del. C.* § 4504(a)(2) (emphasis added).
[53] Order of Dismissal Following Request for Reconsideration, at 5–6 (emphasis added).
[54] *Id.* at 5 (emphasis added).

incorrect conclusion that "even if the wording of [the gender-identity statute] was not clear and unambiguous, *statutory construction mandates [dismissal]. . . .*"[55] Such a narrow interpretation serves to modify the obligations expressly found under DEAL.

### 2. DEAL Mandates Against Dismissal Under § 4501

By focusing on the narrow and permissive language in the gender identity statute, the Commission not only finds a requirement in the law that does not exist, it fails to zoom out and consider three important provisions that speak to DEAL's purpose and construction under 6 *Del. C.* § 4501

First, DEAL's vision is 20/20. Its purpose is straightforward. "This chapter is intended to prevent, in places of public accommodations, practices of discrimination against *any person because of* race, age, marital status, creed, religion, color, sex, *disability*, sexual orientation, gender identity, or national origin."[56] Delaware case law has interpreted this established purpose under both § 4501 and § 4504, which is to "implement reasonable accommodations to ensure equal access to all Delaware citizens."[57] Contrary to the Commission's ruling, Delaware courts have been reluctant to limit the provision of "reasonable

---

[55] *Id.* at 5–6 (emphasis added).

[56] 6 *Del. C.* § 4501 (emphasis added).

[57] *Delaware Tech. and Cmty College*, 2017 WL 2180544, at *3 (citing 6 *Del. C.* §§ 4501, 4504(a)-(d)).

accommodations" under DEAL only to circumstances involving gender identity. Such near-sightedness would be counter to its purpose and violative of the provisions under 6 *Del. C.* § 4501.

Second, DEAL's pronouncement is clear. It expressly mandates that "[t]his chapter *shall be liberally construed* to the end that the rights herein provided *for all people*, without regard to race, age, marital status, creed, religion, color, sex, *disability*, sexual orientation, gender identity, or national origin, may be effectively safeguarded."[58] The law is unequivocal. Yet the Commission's Order fails to cite, consider, or follow it, concluding instead that "statutory construction mandates" dismissal.[59] Where the resounding language of § 4501 says otherwise, the Commission erred in failing to speak of it.

Third, DEAL's last provision signals us to do more. Section 4501 tells us to consider —not disregard— "higher or more comprehensive obligations established by otherwise applicable federal, state, or local enactments."[60] Instead, the Commission redirects the Rays to pursue M.R.'s claims through the Federal Americans with Disabilities Act ("ADA") under 42 U.S.C. § 12182(a)[61] and

---

[58] 6 *Del. C.* § 4501 (emphasis added).

[59] Order of Dismissal Following Request for Reconsideration, at 5.

[60] 6 *Del. C.* § 4501; *see also Rouser*, 2001 WL 1456795, *aff'd,* 2002 WL 384415 (Del. 2002) (looking to *Callwood v. Dave & Busters, Inc.*, 98 F. Supp. 2d 694 (D. Md. 2000) as a source of persuasive authority).

[61] *See* Order of Dismissal Following Request for Reconsideration, at 2–3.

dismisses M.R.'s claims following a review of our sister state laws. This is problematic for several reasons.

A passive acknowledgment that these federal laws exist and that the Rays should go elsewhere is insufficient where DEAL clearly signals us to examine our efforts and consider the obligations established by both federal and state systems.[62] Guidance from the U.S. Department of Justice requires that "[p]ublic accommodations must comply with basic nondiscrimination requirements…[and] also must comply with…reasonable modifications to policies, practices, and procedures, [including] effective communication with people with *hearing, vision, or speech disabilities*; and other access requirements."[63] Our sister states serve as examples also.

---

[62] For example, for M.R. and persons similarly situated, the ADA explicitly provides that discrimination includes: "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability . . . ; a failure to make reasonable modifications in policies, practices, or procedures, . . . ; a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ; [and] a failure to remove architectural barriers, and communication barriers that are structural in nature . . . ." 42 U.S.C. § 12182(b)(2)(A)(i)-(iv).

[63] U.S. Dep't of Justice, Civil Rights Div., Disability Rights Section, *A Guide to Disability Rights Laws* (last updated Feb. 24, 2020).

As noted by the Commission, Maryland[64] and Pennsylvania[65] have included the reasonable accommodation language for persons with disabilities within their Equal Accommodations Statutes.[66] Although Delaware's General Assembly may not have chosen to include similar language in DEAL, § 4504(e) further mandates that nothing in this section "shall be an abrogation of any requirements otherwise imposed by applicable federal or state laws or regulations."[67] This statutory language, in tandem with § 4501's nod to look beyond the statute for additional guidance[68] imposes on the Commission to look at both federal and state laws for guidance to interpret the duties and obligations under DEAL.

Any interpretation to suggest the legislature made a choice to narrow DEAL's protection ignores both the express mandates and comprehensive guidance under DEAL. It takes away the right of a protected class member to be heard. As interpreted, Delaware law would need to reject what has been universally accepted

---

[64] Maryland has specifically required that reasonable accommodations be made for a person with a disability unless it would cause "(1) danger to the individual's health or safety; and (2) undue hardship or expense to the person making the accommodation." *See* Md. Code Ann., State Gov't § 20-305(a)(1)-(2) (West).

[65] Pennsylvania's Equal Accommodations Statute similarly establishes a disabled individual cannot be denied "the opportunity to use, enjoy or benefit from employment and public accommodations…where the basis for the denial is the need for reasonable accommodations, unless the making of reasonable accommodations would impose an undue hardship. *See* 16 Pa. Code § 44.5(b).

[66] *See* Order of Dismissal Following Request for Reconsideration, at 4 (citing Md. Code Ann., State Gov't § 20-305(a)(1)-(2) (West); 16 Pa. Code § 44.5(b)).

[67] 6 *Del. C.* § 4504(e).

[68] *See* 6 *Del. C.* § 4501.

under federal and state laws—that discrimination based on disability does include the failure or refusal to make reasonable accommodations, adjustments, or modifications. This Court cannot reject what has universally been accepted as just.

## CONCLUSION

Twice, M.R. tried to play. The first time, he was told that his speech impairment affected his ability to see. When he asked for a legal review of the play, he was legally ejected from the field and told his disability affected his ability to be heard. Perhaps the results will be the same if the case is heard on its merits, but this Court finds that we should give M.R. a chance to participate.

Under this *de novo* review, the Court finds that in dismissing the Rays' Complaint, the Commission conducted an overly narrow analysis of the protections afforded to individuals under DEAL, failed to consider relevant persuasive authority for interpretive guidance, and ultimately erred in determining reasonable accommodations under DEAL are required only for gender identity. The Commission committed legal error when it dismissed the Rays complaint for failure to state a claim. The Commission's decision is **REVERSED** and **REMANDED** for the reasons set forth in this ruling.

**IT IS SO ORDERED**.

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

20