**STATE of Delaware, Petitioner,**

**v.**

**David E. BECKER, Respondent.**

No. 0809008237.

Family Court of Delaware,
Sussex County.

Submitted: June 16, 2009.
Decided: June 25, 2009.

Casey Ewart, Esquire, Deputy Attorney General, Georgetown, DE, for the Petitioner.

---

**34.** Family Court Civil Rule 34 (1999).

William F. Richardson, Esquire, Office of the Public Defender, Georgetown, DE, for David E. Becker.

HENRISKSEN, J.

Pending before the Court is a Motion to Stay and to Relieve from Sex Offender Registration filed by David E. Becker[1] (Defendant) on February 25, 2009. The State opposes the motion. This case is of particular importance because the Defendant pled "No Contest" to felony level offenses—two counts of Unlawful Sexual Contact in the 2nd Degree. Prior to this request, the Court has only ruled on such motions relating to misdemeanor charges.[2] This is the Court's decision on Defendant's motion.

### Facts

On December 18, 2008, Defendant entered a *nolo contendere* plea to two counts of felony level Unlawful Sexual Contact in the 2nd Degree before this Court. Defendant was 14 years old at the time the offenses occurred. Both victims were under the age of 12. At that time, the Court ordered that the Defendant submit to a Consultant and Assessment Services (CAS) evaluation before sentencing.[3] The Court received the CAS evaluation on January 28, 2009. The Defendant appeared before the Court for sentencing on February 13, 2009. During the sentencing hearing, counsel for Defendant made an oral motion to stay sex offender registration and to relieve Defendant from sex offender registration. The Court instructed counsel for Defendant to file a written motion with the Court. The Court sentenced Defendant to Level V for an indefinite period of time, suspended for Level III probation and ordered that he be placed at Murphey School.[4] The Court received Defendant's motion on February 15, 2009 and received the State's Response to Motion to Stay and Relief from Sex Offender Registration on March 13, 2009.

The Court held a subsequent hearing on June 16, 2009. The hearing was requested by the Deputy Attorney General. Attending the hearing were Deputy Attorney General, Casey Ewart, Esquire; the defendant's attorney, William R. Richardson, Esquire; Carrie Steward, the DFS representative who has been working with the defendant for the past two and one-half years from when the child first went into foster care; Mr. James Nye, the program manager at the Murphey School, where the defendant has resided since mid-February, 2009; Russ Witter, a licensed social worker with at least 20 years experience,

1. Pseudonyms have been substituted for the names of the parties pursuant to Supreme Court Rule 7(d).

2. Upon closer scrutiny, after the Decision was originally released on June 19, 2009, the Court found that the Court has considered similar motions in a case where the charges included felony Endangering of a Child in conjunction with a misdemeanor sex related offense.

3. A CAS evaluation is performed by a psychologist employed by the Children's Department. The evaluation consists of interviews with the defendant as well as the defendant's parent(s). Tests are also administered which are designed to measure such things as the child's emotional, educational, and sexual level of understanding, including assessments to attempt to measure the juvenile's risk of reoffending. The psychologist explores the child's birth, the background of the child's parents, the family history of the child and any siblings, as well as the school and prior criminal history of the child.

4. Elizabeth W. Murphey School provides residential care for dependent and neglected children as well as education and counseling for families. They offer physical and mental health care to residents, and have a program designed for the treatment of juvenile sex offenders.

and who for five years worked with the Children's Department attending several seminars and obtaining a considerable amount of education on sex offender related offenses; and Dr. Teresa Dunbar, a psychologist employed by the State of Delaware who frequently performs Consultant and Assessment Services (CAS) evaluations of defendants to assist the Court in appropriate sentencing.

Both the Murphey School program manager and the DFS worker indicated that the defendant will most likely remain at the Murphey School at least until he is 18. The defendant will also have the ability to remain longer at the Murphey School, if he so elects, until age 21. The defendant is doing very well at Murphey School in his controlled environment. The DFS worker described the defendant as always being well mannered, very polite, and having an "awesome sense of humor". The DFS worker indicated her belief that this child will have a positive future, although he can become moody and frustrated when she discusses with him the possibility of him being registered as a sex offender.

The DFS worker also oversees another juvenile who, now 17, was placed on the registry when he was 8 years old. This other juvenile is often teased at school, and demonstrates a considerable amount of anger by getting into fights with the peers who tease him.

The DFS worker also testified that the defendant being discussed in this present Decision has recently been reunited with his mother. Once per month he enjoys supervised visits with his mother, as well as weekly supervised phone calls. The defendant was originally taken into care over two and one-half years ago because his mother was homeless and on drugs. According to the worker, however, Mother has now turned her life around. She has married a good and supportive husband, they have a home, and she has remained drug-free. The defendant's mother's goal is to eventually get her child back and make it up to him for her prior failures and the harm she has caused her son.

Another positive aspect of this defendant's life is his maternal aunt and her husband. They see the defendant frequently, and they are permitted to take the defendant on excursions out of Murphey School without Murphey School employee supervision. According to the DFS worker, the maternal aunt and her husband have no criminal record, are educated, and demonstrate good morals and values.

Russ Witter testified that he has been counseling the defendant initially two times a week, and now about one time a week. The defendant continues to deny ever having committed the offenses, and he has been consistent in his denial to Dr. Dunbar, Mr. Nye, and to DFS worker Steward. Despite the defendant's denial, Mr. Witter indicated he can still do sex offender related therapy with the defendant. Although Mr. Witter expressed his doubts at first about his chances of success with the defendant, the defendant has become a very strong participant in therapy. Mr. Witter described the defendant as being very open, and even enjoying the sessions. Mr. Witter indicated that the defendant is showing no signs of being out of control in a sexual way. In the fair and structured environment offered by the Murphey School, Mr. Witter believes that this defendant is becoming better able to manage conflict. The defendant understands that it is in his best interest to remain at the Murphey School rather than try to return home to his mother at this time.

The Deputy Attorney General then asked Mr. Witter what the defendant's prospects would be when he eventually left

the structured environment of the Murphey School. More particularly, the question was whether the defendant would regress back into sexual misconduct. Mr. Witter answered that he had "lots of hope" for the defendant. He described the defendant as having very good strengths, being bright, and also demonstrating good social skills. Mr. Witter opined that this defendant would be a low risk for acting out sexually in the future.

Mr. Witter went on to say that it would be devastating for this defendant to be registered as a sex offender. Registering this defendant as a sex offender would have "an incredibly negative impact" on this defendant's chances to benefit from therapy. Registration as a sex offender would reduce this defendant's sense of value.

Mr. Witter also believed that deferring a decision on whether to register the defendant as a sex offender until after he has completed his treatment, or perhaps even until just prior to his 18th birthday, would have a beneficial effect by bolstering the ability of the counselor to keep the defendant motivated in making appropriate efforts in the counseling.

Russ Witter had stated that he saw no deterrent benefit that might result from placing this defendant on the sex offender registry.

Dr. Dunbar performed the CAS evaluation on the defendant which had earlier been received by the Court on January 28, 2009. In addition to the statements already made by Dr. Dunbar in that evaluation, she opined that this defendant, having lived the first 13 years in a somewhat negative and unstable environment, was going to benefit greatly from what he would learn in the next several years at the Murphey School. Dr. Dunbar has detected in this defendant an ability to rebound from problematic things, thereby demonstrating that he has the strength to improve and the willingness to work towards that improvement.

Dr. Dunbar went on to describe the devastation she has seen in some youthful offenders who have been placed on the registry. Many of the youths experience depression as does their entire family system. Dr. Dunbar has had parents of registered youth say "his life is over." She has even seen some registered youths threaten suicide.

Dr. Dunbar agreed with Mr. Witter's assessment that deferring the decision of whether or not to place this defendant on the sex offender registry would assist the counselor in treatment. She also indicated that waiting until making that final decision by getting updated evaluations when the defendant nears his 18th birthday would not be harmful to this defendant even though it would expose him to an area of uncertainty for the next few years.

### Motion to Stay

In his motion, Defendant argued that it would be contrary to the administration of justice and the best interests of the Defendant to register him as a sex offender immediately. In support, he cited portions of the CAS evaluation that conveyed that he was considered a low to moderate risk for future juvenile offenses, and that he would likely continue to do well and refrain from inappropriate behavior in the future if he is placed in a structured environment. Indeed, the testimony the Court heard from Russ Witter, Dr. Dunbar, and the others at the recent hearing support this position.

The State argues that 11 Delaware Code § 4121(c) requires that registration occur following sentencing. In support of its position, it provides two case citations:

*Helman v. State*[5] and *Coleman v. State.*[6] A review of *Helman* and *Coleman* indicates that both were decided before a germane change to the statute was made in 2007.

Section 4121(c) addresses the time at which a judge must place an offender on the sex offender registry, if registration is appropriate. The subchapter in which § 4121 is contained underwent a substantial overhaul in 2007. Prior to the 2007 changes, the language in § 4121(c) reads as follows:

> Following the sentencing of a person convicted or adjudicated delinquent for any offense described in subparagraphs (a)(4)a., b., d. or g. of this section, *the sentencing court shall conduct a hearing at which time it shall designate the person as a sex offender and assign him or her to a Risk Assessment Tier.* Any hearing required by this section shall be separate from and shall follow the sentencing hearing, provided that such hearing may be held immediately following the sentencing hearing. (Emphasis added.)[7]

Currently, the applicable language in § 4121(c) reads as follows:

> Following the sentencing of a person convicted or adjudicated delinquent for any offense described in paragraph (a)(4)e. of this section, or following a finding by the sentencing court that the person has violated the terms of that person's own probation or parole as set forth in paragraph (a)(4)f. of this section, the sentencing court shall assign the

defendant to the Risk Assessment Tier applicable for the originally charged offense.[8]

Clearly, this current language is different from the language contained in earlier versions of this subchapter. The prior versions mandated a hearing and used the term "at which time," rather than "following" when speaking of registration. This change is substantial. The term "at which time" left no room for discretion; however, "following" allows the Court to defer placing an offender on the registry until some point after sentencing.[9]

Let us now go from this substantial, but perhaps subtle, change in wording in 11 Delaware Code § 4121(c) to the key statutory wording out of which this Decision evolves. That wording is found in 11 Delaware Code, § 4121(d)(6)c. A portion of the wording of that subsection, which will be addressed later, permits the Family Court Judge the discretion to relieve a juvenile sex offender from placement on the sex offender registry. The last two sentences of Del.Code Ann. tit. 11, § 4121(d)(6)c demonstrate the Legislature's intent to permit a Family Court Judge the discretion to defer making a decision on whether to register a juvenile or to relieve a juvenile from registration. Those last two sentences of 11 *Delaware Code* § 4121(d)(6)c, which immediately follow a provision which permits juvenile offenders to seek relief from registration if they were less than 18 years old at the time of the crime, reads as follows:

> Any person seeking relief from designation as a sex offender under this

---

**5.** *Helman v. State*, 784 A.2d 1058 (Del.2001).

**6.** *Coleman v. State*, 729 A.2d 847 (Del.1999).

**7.** 71 Del. Laws ch. 429 (1998) (repealed 2007).

**8.** Del.Code Ann. tit. 11, § 4121(c)(2007).

**9.** For a further discussion and analysis on the ability of a Family Court Judge to defer his or her decision on whether to register as a sex offender a juvenile who has been adjudicated on a sex related offense, including statutes enacted in Texas and Alabama, see *State v. Horton*, 2008 WL 6742246 (Del.Fam.Ct.).

paragraph shall file a petition with the sentencing court prior to sentencing requesting such relief. The petition shall be granted or denied by the sentencing court after it weighs all relevant evidence which bears upon the particular facts and circumstances of the offense, and the character and propensities of the offender.[10]

In many cases involving juvenile sex offenders, the only way the Family Court Judge can make a proper determination of the character and propensities of the offender is to look at the defendant's conduct and progress over time, including reevaluation after the juvenile receives sex offender counseling and treatment. Where one of the major goals of the Family Court is to provide rehabilitation for a juvenile, it would be a great error to require the Court to base this important decision by limiting the Court to looking at only a brief snapshot in time. The State is requesting that the Court limit its view to that brief time between the commission of the crime and the juvenile's initial CAS evaluation, all of which occurs before the subsequent attempts to rehabilitate the juvenile through appropriate counseling and treatment. This pre-rehabilitation momentary snapshot in time also fails to recognize that juveniles are experiencing during this stage of life many hormonal, physical, and mental changes as they develop rapidly into adulthood. It is the hope of the Court that, during this time of rapid growth and development, both physically and mentally, the growth will be positive and successful, especially when combined with appropriate treatment and counseling. Where that growth proves to be positive and successful and where there would be likely little benefit, if any, that registration would provide toward protecting the public, it would then appear appropriate to relieve the juvenile from the future stigma and damage registration would likely cause. On the other hand, it would seem the State would have an equal interest in wanting the Family Court Judge to defer making that important decision, especially where the subsequent evaluations demonstrated that the juvenile had not progressed positively, and which may even provide serious indications to suggest that a juvenile is developing into a person with a high potential to be a future adult pedophile. Such an individual should clearly be registered for the public's knowledge and safety. Those two important sentences just noted above in 11 *Delaware Code* § 4121(d)(6)c clearly indicate the Delaware Legislature's intent to place the Family Court Judge in the best position to make an appropriate decision, not only for the best interests of the juvenile, but also for the public's safety.

In this case, the Court sentenced Defendant to placement at Murphey School. The Court finds it fair and proper to reserve its decision of whether or not to place the defendant on the Sex Offender Registry until Defendant completes treatment. In arriving at this decision, the Court has considered Defendant's background, as explained in his CAS evaluation. He had a tumultuous childhood, characterized by a mother with a substance abuse problem and bouncing around from home to homeless shelter. Once he was placed in foster care, he did well, but was unfortunately moved around again. When he was placed in his most recent foster home, there were no complaints from his foster family or from him until an incident involving suspected theft. According to his CAS evaluation, Defendant has a low to moderate risk of committing future juvenile offenses. Testimony most

10.  Del.Code    Ann.    tit.    11,    § 4121(d)(6)c.(2007).

recently of Mr. Witter, Dr. Dunbar, the DFS worker, and Mr. Nye at the Murphey School indicated how well the defendant is doing. Indications and present projections by these witnesses, all of whom share various levels of expertise in working with juveniles, including juveniles who have committed sex related offenses, are that the defendant is and will be in the future a low risk for sexual re-offending. Even the family unit, most particularly his mother, to whom he may return in the future, is vastly improved.

The Court believes that it is in the best interests of the Defendant for the Court to stay registration until the defendant completes treatment and the Court receives information regarding his risk assessment for committing future sexual offenses. By taking such deferred action, the Court will be acting in the best interests of this juvenile. At the same time, the Court will have available to it a larger window of time to better assess any future risk to the public's safety.

### Motion to Relieve from Sex Offender Registration

Defendant asks to be relieved from registering as a sex offender under 11 Delaware Code § 4121(d)(6). The State opposes the requested relief. The defendant pled "no contest" to two felony level offenses of Unlawful Sexual Contact in the 2nd Degree. Recall that both victims were under 12, and the defendant was 14.

Title 11, chapter 41, subchapter III governs the registration of sex offenders. The relevant provisions of section 4121(d) read as follows:

(2) Risk Assessment Tier II. Any sex offender convicted or adjudicated delinquent of any of the following offenses shall be designated by the court to Risk Assessment Tier II:

a. Rape in the Third Degree unless the offense involved a child under 12 or the offense involved force or the threat of physical violence, Rape in the Fourth Degree, *Unlawful Sexual Contact in the Second Degree,* Unlawful Sexual Intercourse in the Third Degree, Unlawful Sexual Penetration in the Third Degree, Sexual Extortion, Bestiality, Dangerous Crime Against a Child, Unlawfully Dealing in Child Pornography, Possession of Child Pornography, Providing Obscene Materials to a Person Under the age of 18, Sexual Solicitation of a Child; (emphasis added)

(6) Notwithstanding any provision in this section or in § 4120 of this title to the contrary, any person who would otherwise be designated as a sex offender pursuant to this section and to § 4120 of this title may petition the sentencing court for relief from such designation, and from all obligations imposed by this section and § 4120 of this title if:

a. *The Tier II or Tier III offense for which the person was convicted was a misdemeanor and the victim was not a child under 12 years of age;* (emphasis added) and

b. The person has not previously been convicted of a violent felony, or any other offense set forth in paragraph (a)(4) of this section, or of any offense specified in the laws of another state, the United States or any territory of the United States, or any offense in a foreign jurisdiction which is the same as, or equivalent to, such offenses; and

c. The sentencing court determines by a preponderance of the evidence that such person is not likely to pose a threat to public safety if released from the obligations imposed by this section, and by § 4120 of this title.

Notwithstanding anything in this paragraph to the contrary, *no person designated as a Tier II or Tier III sex offender shall be afforded relief from designation as a sex offender if the victim of any of the offenses for which the person was convicted were less than 12 years old at the time of the crime, unless the person was also less than 18 years old at the time of the crime in which case the prohibition set forth in this sentence shall not apply.* Any person seeking relief from designation as a sex offender under this paragraph shall file a petition with the sentencing court prior to sentencing requesting such relief. The petition shall be granted or denied by the sentencing court after it weighs all relevant evidence which bears upon the particular facts and circumstances of the offense, and the character and propensities of the offender. (Emphasis added.) [11]

Defendant admits that he would normally be placed on the sex offender registry as a Tier II offender, due to his plea of nolo contendere to two counts of Unlawful Sexual Contact in the 2nd Degree. However, he avers that he is eligible to be relieved from registration pursuant to the language of 11 *Delaware Code* § 4121(d)(6). First, he notes that the language in § 4121(d)(6)a. is ambiguous. He points out that this first sub-paragraph permits relief from registration if a defendant is convicted of a Tier II or Tier III offense that is a misdemeanor. But Defendant correctly notes that there are no misdemeanors classified as Tier II or Tier III offenses. Thus, this portion of the statute makes little sense.

Defendant next notes that he meets the conditions set forth in the next paragraph, § 4121(d)(6)b., because he has not previously been convicted of a violent felony or such other offense that would prevent him from seeking relief from registration.

Finally, Defendant avers that the clear wording of the next paragraph set forth in § 4121(d)(6)c. permits the Court to consider relieving Defendant from registration. In permitting a defendant from being relieved from registration, the first sentence of this sub-paragraph requires the Court to determine "by a preponderance of the evidence that such person is not likely to pose a threat to public safety if released from the obligations imposed by this section." [12] The next sentence in § 4121(d)(6)c. then prohibits relief from registration for a Tier II or Tier III sex offender in any case where the victim was less than 12 at the time of the crime. The victim in this case was less than 12 at the time of the crime. But the same sentence then permits the Court to consider giving relief from registration to a defendant who was under 18 at the time of the crime, despite the victim being under 12, when it goes on to say, "unless the person was also less than 18 years old at the time of the crime in which case the prohibition set

---

**11.** Del.Code Ann. tit. 11, § 4121(d)(6)c. reads as a continuous paragraph according to the legislative history found in Delaware Laws, as well as on the Delaware Code Online (http://delcode.delaware.gov). When one reads that particular section as a continuous paragraph, it is clear that an offender under the age of 18 whose victim was under the age of twelve may be afforded relief by the Court. However, according to the printed version of the *Delaware Code,* § 4121(d)(6)c. ends with the word "title" and the remainder is subsumed into § 4121(d)(6). The break in paragraph allows for some of the confusion that this section has created, by creating ambiguous, if not contradictory language.

**12.** Del.Code Ann. tit. 11, § 4121(d)(6)c.(2007).

forth in this sentence shall not apply." [13] The final two sentences of this sub-paragraph go on to require that a defendant request relief from registration, followed by the criteria the Court should consider in making that decision. Those criteria include weighing "all relevant evidence which bears upon the particular facts and circumstances of the offense" as well as "the character and propensities of the offender." [14]

The State, in response, asserts that felonious sex offenders can receive no relief under § 4121(d)(6). Although acknowledging that there are no misdemeanor Tier II of Tier III sex-related crimes, the State argues that the statute applies only to misdemeanors, and has applied only to misdemeanors since the statute was originally enacted. The State fails to address the changes in the wording of the statute that occurred in 2007. The State also averred that the exception to registration involving victims under 12 years of age and offenders under 18 years of age may not be applied in this case because Defendant pled to two felony charges. But the State cited no authority for this argument, and failed to demonstrate how these circumstances fit within the restrictions of the current language of § 4121.

There is an obvious drafting error contained in the statute regarding Tier II and Tier III misdemeanors, since no such crimes exist. The defendant satisfies the second criterion of not having been previously convicted of a prior violent felony or other exception. Even though the victim was under 12 at the time of the crime, the clear wording of the statute permits the Court to relieve from registration a defendant who at the time of the crime was under 18. Indeed, such a result is clearly compatible with the general philosophy of the Family Court in dealing with juveniles, that being the recognition that juveniles are susceptible to rehabilitation, and that they are entitled to a second chance in life if they prove to be worthy. [15]

■ The Rule of Lenity prescribes that when a criminal statute is ambiguous, it should be construed against the State and read in favor of the defendant. [16] This statute is a perfect example of ambiguous language. Two portions of the same subsection seem to cancel out one another, and it also speaks of a type of crime that does not exist. The legislative history does not clarify the meaning or intent of the statute. [17] Therefore, it seems that this Court must read that statute in a light most favorable to Defendant. In addition, the clear wording of the unambiguous portion of the statute demonstrates the legislature's intention to permit the Court to have the discretion to relieve juvenile sex offenders from registration where appropriate, and to defer that decision until such time as all factors can be most effectively weighed, including both the safety of the public and the demonstrated rehabilitation of the defendant.

13. *Id.*

14. *Id.*

15. See *State v. Fletcher,* 974 A.2d 188, 2009 WL 1524937 (Del.), wherein this Judge discusses at length with supporting citations, the general philosophy of the Family Court of the State of Delaware as well as the traditional approaches to the treatment of juveniles over time from around the country.

16. *State v. Haskins,* 525 A.2d 573, 576 at fn. 3 (Del.Super.1987), *rev'd on other grounds,* 540 A.2d 1088 (Del.1988); *see also State v. Boston,* 1992 WL 91173 (Del.Super.); *In re Writ of Habeas Corpus of Lehman,* 1995 WL 1937152 (Del.Super.).

17. *See supra* note 4.

## Conclusion

Before reaching the conclusion of this Decision, the Court wants to make clear that the Court is not attempting to legislate, or even to attempt to guide the Legislature in "crafting" new legislation. The Court fully understands the separate purposes of the various branches of government, and has no intent to substitute its judgment for the Delaware Legislature. However, given the present state of the law regarding juvenile sex offenders, their possible registration, and the timing of that registration, all as set forth herein, the Court is duty-bound to attempt to discern the Legislature's present intent, and to make a decision that applies that discerned intent.

It appears to the Court that many of the changes now present in Delaware's juvenile sex offender law came as a result of the Delaware Legislature's attempts to quickly move and adopt certain provisions so that Delaware would be in compliance with the federally mandated Adam Walsh Child Protection and Safety Act, signed by President Bush in 2006.[18] While attempting to make changes to comply with Adam Walsh provisions, some of these new sections were mixed in with existing sections. As indicated, the Court believes some of these quickly added and interspersed sections have created confusion in the existing Delaware law. At the same time, however, our Delaware Legislators added certain specific wording which, in the Court's opinion, demonstrated an intent of our Delaware Legislature to move in a new direction regarding the treatment and registration of juvenile sex offenders. The previous Delaware laws failed to distinguish between adult predators and juvenile sex offenders. The very specific wording in some of the new provisions clearly demonstrates the Legislature's intent to treat adult sex predators very differently from our youthful sex offenders. Indeed, such an approach follows the Legislature's long standing statutory directive on how Family Court Judges should handle juvenile delinquency cases, set forth in 10 *Delaware Code* § 1002. That statute provides the following:

> Except [where a child has committed certain very serious criminal offenses enumerated in Del.Code Ann. tit. 10 § 1010, or is no longer amenable to the rehabilitative services available to the court] no child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency, nor shall a child be charged with or prosecuted for a crime in any other court. In this Court, the nature of the hearing and all other proceedings shall be *in the interest of rather than against the child.* (Emphasis added.)[19]

As the Court reads the present statutes, the clearly worded sections indicate to the Court that the Legislature has decided that it is in the best interest of our youthful sexual offenders that the Family Court sentencing Judge have the discretion in most cases, except very serious crimes of violence, whether to register a juvenile. It also appears that the Legislature has permitted the Family Court Judge to defer his or her determination of whether a juvenile should be registered or not as a sex offender until a later date. By citing two statutes from the States of Texas and Alabama, this Court is not suggesting to the Legislature that Delaware should pass similar statutes. But when the reading of the present statute indicated that the Family Court Judge was being given the

---

18. A more lengthy description of this Act is set forth in *Fletcher v. State,* 2008 WL 2912048 (Del.Fam.Ct.).

19. Del.Code Ann. tit. 10, § 1002 (1999).

discretion to defer making that decision, it behooved the Court to undertake research in the hopes of being guided by the experiences of others. The Court's review of the statutes of Texas and Alabama provided that guidance. When considering those statutes, the Court felt that by deferring a decision until a juvenile was provided the appropriate treatment and a window of time was permitted to hopefully assist the Court in making a determination of whether or not the treatment had succeeded, the Court found these concepts to be in the best interests of the juvenile defendant, while also providing the Court a sufficient time to determine if registration was necessary for the public safety. The Court fully understands that the Legislature is in no way bound by this Court's Decision to use any of the particular statutes of other states noted in this Decision.[20]

The Court hereby stays and defers its Decision on whether to register Defendant as a sex offender until Defendant completes the sex offender ordered treatment. Once treatment is completed, but not later than the defendant turning 17 years of age, the treatment provider shall provide a risk assessment of the defendant to the Office of the Attorney General, the defendant's attorney, and to the sentencing Court. Unless within 30 days after the mailing date of that report the Attorney General's Office files a motion seeking to renew its request to have this defendant registered at a risk assessment Tier II, the defendant shall be relieved from registering as a sex offender. If, however, the Office of the Attorney General files a timely request to renew, the Court will then proceed to hold a hearing to determine whether it is appropriate or not to register Defendant as a sex offender. If no hearing is requested, the Court will then sign an Order prepared and submitted by the defendant or his attorney ordering that the defendant is relieved from registering as a sex offender.

IT IS SO ORDERED this 25th day of June, 2009.[21]

---

**20.** The Court believes this Decision and Order should be interpreted for purposes of appeal as a Final Order. If, however, this Court's decision to defer until a later date its determination of whether the defendant should be registered as a sex offender causes this Decision and Order to be reviewed as Interlocutory in Nature, this Court will agree with the request of either party to certify this matter to the Supreme Court of the State of Delaware pursuant to its Rule 41. It is this Judge's opinion that the issues decided by this Decision may involve questions of law of first instance in Delaware. In addition, the questions of law relate to the construction or application of a statute of this state which has not been, but should be, settled by the Court.

**21.** This Decision and Order amends the Court's initial Decision and Order issued on June 19, 2009. Most of the amendments are technical and many include the addition of footnotes. Footnote # 1 identifies an error in the original Decision. The present Decision and Order includes additional arguments in the Motion to Stay section.