# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       :

                             :     I.D. NO. 1507023289

v.                      :     Kent County

                             :

ROBERT C. O'DELL,        :

                             :

      Defendant.        :

Submitted: February 15, 2017
Decided: March 1, 2017
Written Decision: March 6, 2017

## OPINION AND ORDER

Upon the State of Delaware's Motion to Designate
the Defendant as a Tier I Sex Offender. *Denied.*
Upon Defendant's Motion for Relief from Sex
Offender Designation. *Granted.*

Kathleen A. Dickerson, Esquire, Department of Justice, Dover, Delaware; attorney for the State of Delaware.

Anthony J. Capone, Esquire, Office of the Public Defender, Dover, Delaware; attorney for the Defendant.

WITHAM, R.J.

This case centers around a thorny question of statutory construction and interpretation. It forces the Court and the parties to wade once again into the morass of Delaware's sex-offender registration and community notification scheme and to endeavor to bring some measure of certainty and clarity to some of the scheme's inartfully drafted provisions. The statute's confusing language clouds with uncertainty the process by which convicted low-risk sex offenders may ask the Court to relieve them from being designated as offenders.

Before the Court are Defendant Robert O'Dell's Motion for Relief From Sex Offender Designation and the State's Motion to Designate the Defendant as a Tier I Sex Offender. At the first date scheduled for Mr. O'Dell's sentencing, the Court asked the parties whether its earlier decision in *State v. President*[1] barred consideration of Mr. O'Dell's motion for relief. The parties requested a continuance to submit memoranda of law. On February 15, 2017, the parties argued their motions before the Court.

The Court concludes that the statute permits defendants who are convicted of Tier I offenses to move for relief from designation, departing from dicta in *State v. President*.[2] Having determined that Mr. O'Dell may move for relief, the Court finds that he has met his burden of demonstrating by a preponderance of the evidence that he is not likely to pose a threat to public safety if he is released from his registration obligations. The State's Motion to Designate is **DENIED** and Mr. O'Dell's Motion

---

[1] 2014 WL 595406 (Del. Super. Jan. 2, 2014).

[2] *Id.*

for Relief is **GRANTED**.

## FACTS

Mr. O'Dell was indicted on October 5, 2015 on two counts of Rape in the Fourth Degree arising out of an incident in which he had sexual intercourse with a victim four years his junior. Mr. O'Dell was nineteen at the time of the offense, and his victim was fifteen. According to the State, Mr. O'Dell met his victim online, had phone contact with her, and eventually walked from his home in Delmar, Maryland toward her home in the Dover, Delaware area. The victim and her mother picked him up and brought him to her home, but the mother eventually kicked him out. The victim snuck out of the house and then ran away with Mr. O'Dell. The pair then had sexual intercourse.

Mr. O'Dell was re-indicted on November 2, 2015 to add a charge of Non-Compliance with Bond for having unauthorized contact with his victim.

The State and Mr. O'Dell entered into a plea agreement wherein he pleaded guilty to Unlawful Sexual Contact in the Third Degree and Non-Compliance with Bond. The parties submitted motions prior to sentencing. Mr. O'Dell sought relief from designation as a sex offender, and the State sought for the Court to designate Mr. O'Dell as a Tier I offender.

This is the Court's decision on those motions.

## THE PARTIES' CONTENTIONS

Mr. O'Dell contends that 11 *Del. C.* § 4121(d)(6)(a) is ambiguous and contradictory, and that its legislative history indicates that the General Assembly

intended to leave an avenue for relief at sentencing for offenders convicted of Tier I misdemeanors. He argues that he is unlikely to pose a threat to public safety based on a psychological evaluation which indicated that he posed a low to moderate risk of reoffense, as well as the presence of various mitigating factors that would make reoffense unlikely.

The State argues that 11 *Del. C.* § 4121(d)(6)(a) is unambiguous in that there are circumstances in which a misdemeanor could result in a Tier II or Tier III designation. It points to the facts that Mr. O'Dell traveled a great distance to meet and have intercourse with an underage victim, and that he then contacted her in violation of the terms of his release. Based on these facts, it argues, Mr. O'Dell poses a threat to public safety.

## STANDARD OF REVIEW

The Court follows a straightforward standard when interpreting and construing statutes. The first issue is to determine whether the statute is ambiguous.[3] A statute is ambiguous when it is "capable of being interpreted in two or more different senses."[4] "If the statute is unambiguous, . . . there is no room for judicial interpretation and 'the plain meaning of the statutory language controls.'"[5]

But if the statute is ambiguous, "we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious

---

[3] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 342 (Del. 2012).

[4] *Id.* at 342 (citing *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011)).

[5] *Id.* at 342–43 (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).

whole."[6]

A defendant may petition the sentencing court for relief from designation as a sex offender if three elements are satisfied:

> a. The Tier II or Tier III offense for which the person was convicted was a misdemeanor and the victim was not a child under 13 years of age; and
> b. The person has not previously been convicted of a violent felony, or any other offense set forth in paragraph (a)(4) of this section . . . . ; and
> c. The sentencing court determines by a preponderance of the evidence that such person is not likely to pose a threat to public safety if released from the obligations imposed by this section, and by § 4120 of this title.[7]

## DISCUSSION

Delaware's sex offender registration and notification scheme does provide the possibility of relief from designation for sex offenders accused of Tier I misdemeanors. Mr. O'Dell's petition will be granted because the uncontradicted results of his psychological evaluation show that he is unlikely to reoffend.

*I. The Relief-from-Designation Provision Allows the Possibility of Relief for Defendants Convicted of Tier I Misdemeanors*

In construing the provisions of 11 *Del. C.* § 4121(d)(6), the Court will review the background of its enactment and the decisional law that Delaware courts have generated thus far. The Court determines, based on an analysis of the text, the application of the canons of statutory construction, and a review of the legislative

---

[6] *Id.* at 343 (quoting *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011)).
[7] 11 *Del. C.* § 4121(d)(6).

history, that the relief-from-designation provision permits offenders convicted of Tier I misdemeanors to petition for relief.

### A. Background

In order to frame the issues surrounding the interpretation of 11 *Del. C.* § 4121(d)(6), the Court will review the sex offender registration and notification scheme as a whole, the federal and state legislative changes that led to the enactment of Senate Bill 60 in 2007, and the case law that resulted from the enactment of Senate Bill 60.

### 1. Delaware's Sex Offender Registration Scheme

Delaware's sex offender registration scheme contemplates three tiers of sex offenses.[8] For Tier II and Tier III offenses, the statute enumerates the crimes that presumptively fall within each tier.[9] Tier I includes all sex offenses not enumerated within Tier II and Tier III.[10] A comprehensive list of sex offenses that give rise to a registration requirement is also provided within the statute.[11]

Once an individual is convicted or adjudicated delinquent of any sex offense, "the court shall inform the person that the person shall be designated as a sex offender and that a Risk Assessment Tier will be assigned to that person by the court."[12] Following the sentencing, "the sentencing court shall assign the defendant to the Risk

---

[8] 11 *Del. C.* § 4121.

[9] *Id.* § 4121(d)(1), (2).

[10] *Id.* § 4121(d)(3).

[11] *Id.* § 4121(a)(4).

[12] *Id.* § 4121(b).

Assessment Tier applicable for the originally charged offense."[13]

Tier III crimes are among the most serious sexual crimes that an individual might commit, including first and second degree rape.[14] Tier II crimes are serious sexual crimes that nonetheless are not as serious as Tier III offenses, including third degree rape in the absence of certain aggravating circumstances, fourth degree rape, and child pornography offenses.[15] Tier I offenses are unenumerated, but include all sex offenses that are designated as misdemeanors.[16]

An individual convicted of a misdemeanor sex crime may, under certain circumstances, be assigned to a higher tier. For example, the State may move for a defendant convicted of a Tier I offense to be designated to Tier II "if the sentencing court determines by a preponderance of the evidence . . . that public safety will be enhanced by assigning the offender to Risk Assessment Tier II."[17] Likewise, a defendant convicted of a second Tier I offense within five years of the previous offense will be designated to Tier II.[18] And when a defendant is charged with one tier of offense and ultimately pleads guilty to a lesser included charge of that offense, he will be placed in the tier of the originally charged offense.[19]

---

[13] *Id.* § 4121(c).

[14] *Id.* § 4121(d)(1)a.

[15] *Id.* § 4121(d)(2)a.

[16] *See id.* § 4121(d)(3).

[17] *Id.* § 4121(d)(2)f.

[18] *Id.* § 4121(d)(5).

[19] *Id.* § 4121(c).

Prior to amendments to the sex offender registration scheme in 2007, an individual could petition the sentencing court for relief from designation prior to sentencing if (1) the offense was a misdemeanor and the victim was not under 13 years of age, (2) the person had not previously been convicted of a violent felony or sex offense, and (3) "[t]he sentencing court determine[d] by a preponderance of the evidence that" the defendant "is not likely to pose a threat to public safety if released from the obligations imposed by this section, and by § 4120 of this title."[20] The provision imposed an additional requirement that a defendant could not petition for relief if the victim was under eighteen unless the defendant was also under eighteen at the time of the offense.[21]

*2. The Sex Offender Registration and Notification Act (SORNA)*

In 2006, Congress enacted the Adam Walsh Child Protection and Safety Act.[22] Title I of the Act was designated as the Sex Offender Registration and Notification Act (SORNA).[23] SORNA was created "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for the registration of those offenders."[24]

---

[20] *Id.* § 4121(d)(6) (2006).

[21] *Id.*

[22] Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, 120 Stat. 587; *see generally State v. D.M.*, No. 1108022401, 2013 WL 1845596, at *7–*8 (Del. Fam. Ct. Mar. 8, 2013) (discussing the Adam Walsh Child Protection and Safety Act).

[23] Adam Walsh Child Protection and Safety Act, 120 Stat. at 590.

[24] *Id.*, sec. 102, 120 Stat. at 590.

8

SORNA envisioned state registration requirements covering three tiers of offenders, like Delaware's scheme.[25] Tier II or Tier III offenders were those who committed "offense[s] . . . punishable by imprisonment for more than one year" that were comparable to or more severe than certain enumerated federal offenses.[26] SORNA did not contain a provision for relief from designation.[27]

States were given three years to implement SORNA's provisions before their failure to implement them would result in a decrease in certain federal funding.[28] Prompt compliance (within one or two years) would result in bonus payments under the statutorily created grant program.[29]

### 3. Senate Bill 60

In 2007, not long after the enactment of SORNA, the General Assembly considered Senate Bill 60 ("SB 60").[30] The bill's synopsis indicated that it was intended to comply with SORNA's requirements:

> This bill amends the existing Megan's Laws in order to conform to recent federal legislative changes required under the 'Adam Walsh Act.' . . . Other changes are intended to reflect practical concerns based upon Delaware Supreme Court interpretations of the statutes. Outdated hearing and timing requirements are eliminated based upon the

---

[25] *Id.*, sec. 111, 120 Stat. at 591.

[26] *Id.*, sec. 111, §§ 3, 4, 120 Stat. at 591.

[27] *But see id.*, sec. 115, 120 Stat. at 595.

[28] *Id.*, secs. 124, 125, 120 Stat. at 598.

[29] *Id.*, sec. 126, 120 Stat. at 599.

[30] Del. S.B. 60, 144th Gen. Assem., 76 Del. Laws ch. 25 (2007).

compulsory nature of Delaware's Megan's Laws.[31]

In its original form, SB 60 and its synopsis did not affect the relief-from-designation provision found at 11 *Del. C.* § 4121(d)(6). After its introduction, an amendment was introduced which would limit relief from designation for offenses where the victim was less than twelve years old.[32] Under the amendment, an offender could not seek relief for a crime against a victim under twelve years of age unless the offender was under eighteen at the time of the offense.[33]

On the day SB 60 was considered on the floor of the Senate, the first amendment to the bill was stricken and a new amendment was introduced and passed in its place.[34] The new amendment, according to its synopsis, was intended to accomplish the same change to the relief-from designation provision as its predecessor: "This amendment . . . clarifies that no person shall be afforded relief from designation as a sex offender if the victim was less than 12 years old at the time of the crime, unless the person convicted was less than 18 years old at the time of the crime."[35]

Sponsors of SB 60 in both chambers invited the Chief of Staff of the Delaware Department of Justice to address each chamber on the legislation as it was being

---

[31] *Id.* syn.

[32] *Id.* amend. S.A. 1.

[33] *Id.*

[34] S.B. 60 actions history, http://legis.delaware.gov/BillDetail?legislationId=18337.

[35] S.B. 60 amend. S.A. 2 syn.

considered. Senators and representatives posed questions to the Chief of Staff to clarify the effects of the bill's adoption.

In responses to questioning in both chambers, the Chief of Staff explained that the bill would preserve an avenue for relief from designation for offenders accused of Tier I misdemeanors.

In the Senate, a senator asked the Chief of Staff if someone guilty of a Tier I offense would have any recourse if required to register.[36] The Chief of Staff explained that after ten years an offender could petition the Court, but further "you would in that example as a misdemeanor offender be able to ask the Court not to ever designate you as a sex offender, because the victim's over 12, you're over 18, it's a misdemeanor."[37]

In the House, one representative expressed concern to the Chief of Staff that an eighteen-year-old who committed unlawful sexual contact would not have recourse.[38] The Chief of Staff then explained "If you're under 18 and your victim is as well, you–there is an exception in the law that you do not have to be a registered sex offender, and you can petition for that, actually, at sentencing–"[39] The

---

[36] Def.'s Mem. in Support of his Mot. For Relief from Sex Offender Designation Ex. B; *see also* Compact disc: Floor Debate on Senate Bill 60 in the Delaware Senate at 29:20 (May 1, 2007) (on file with Delaware State Archives).

[37] *Id.*

[38] Def.'s Mem. in Support of his Mot. For Relief from Sex Offender Designation Ex. B; *see also* Compact disc: Floor Debate on Senate Bill 60 in the Delaware House of Representatives at 6:55 (May 3, 2007) (on file with Delaware State Archives).

[39] *Id.*

representative responded, "No, I appreciate that. I was referring to a court case with an . . . actual 18 year old enrolled as a senior in high school."[40] The Chief of Staff responded "Tier I offenders can also ask for the same kind of relief."[41]

Senate Bill 60 was considered and passed by the Senate on May 1, 2007 and sent to the House, which considered and passed it on May 3.[42] It was signed by the Governor on May 17.[43]

*3. Changes to the Relief-from-Designation Provision*

Senate Bill 60 amended 11 *Del. C.* § 4121(d)(6) to substantially its current form, adding "Tier II or Tier III" to subparagraph "a" and the end of paragraph "d."[44] It also lowered the victim age restriction, permitting relief where the victim was twelve or older instead of eighteen or older.[45]

As written, the current relief-from-designation provision permits relief when three elements are met:

> a. The Tier II or Tier III offense for which the person was convicted was a misdemeanor and the victim was not a child under 13 years of age; and
> b. The person has not previously been convicted of a violent felony, or any other offense set forth in paragraph (a)(4) of this section . . . . ; and

---

[40] *Id.*

[41] *Id.*

[42] S.B. 60 actions history.

[43] *Id.*

[44] S.B. 60, sec. 49.

[45] *Id.*

c. The sentencing court determines by a preponderance of the evidence that such person is not likely to pose a threat to public safety if released from the obligations imposed by this section, and by § 4120 of this title.[46]

It prohibits relief for Tier II or Tier III offenders if the victim was under twelve years old unless the offender was less than eighteen years old at the time of the crime.[47]

The language of the provision contains an apparent contradiction. Subparagraph "a" refers to Tier II or Tier III misdemeanors, yet none of the enumerated crimes in Tier II or Tier III are misdemeanors. The provision thus raises a question of when, if at all, relief from designation would be available to an offender.

*4. Cases Interpreting the Relief-from-Designation Provision*

One of the first cases to address the revised relief-from-designation provision was *State v. Becker*, a family court case.[48] The defendant in that case was a juvenile who had pleaded *nolo contendere* to two counts of Unlawful Sexual Contact in the

---

[46] 11 *Del. C.* § 4121(d)(6).

[47] *Id.*

[48] 979 A.2d 1149 (Del. Fam. Ct. 2009), *overruled by Fox v. State*, 11 A.3d 226 (Table), 2010 WL 5342956 (Del. Dec. 20, 2010). As the State accurately points out, the same judge had earlier remarked upon 11 *Del. C.* § 4121(d)(6), buried within several layers of dicta in an opinion that spans thirty pages on Westlaw. *Fletcher v. State*, No. 0404010688, 2008 WL 2912048, at *26–*27 (Del. Fam. Ct. June 16, 2008). In that case, the issue was not before the court and the judge remarked upon the paragraph as an example of interpretive difficulties within Delaware's sex offender registration and notifications scheme. *Id.* at *26. The Court does not assign it much persuasive value.

Second Degree.[49] He sought relief from registration under 11 *Del. C.* § 4121(d)(6), arguing that the ambiguity in subparagraph "a" should be construed against the state in reliance on the rule of lenity.[50] The family court agreed, finding the statute ambiguous because "[t]here is an obvious drafting error contained in the statute regarding Tier II and Tier III misdemeanors, since no such crimes exist."[51] Applying the rule of lenity, the court construed the statute to provide the possibility of relief to the defendant despite his pleas to felony sex offenses, noting that "[t]wo portions of the same subsection seem to cancel out one another, and . . . speak[ ] of a type of crime that does not exist."[52]

Eventually, the Supreme Court overruled *Becker* in *Fox v. State*, holding that 11 *Del. C.* § 4121(d)(6) did not permit relief for juvenile sex offenders convicted of felony sex crimes.[53] While the Supreme Court did not address the issue, it is also clear that the family court in *Becker* erred in applying the rule of lenity, because the rule of lenity is not applicable to Title 11.[54]

The family court held that the relief-from-designation statute did not apply to juveniles adjudicated delinquent of felony sex crimes in *State v. E.A.*[55] In that case,

---

[49] *Id.* at 1150.

[50] *Id.* at 1155–57.

[51] *Id.* at 1157.

[52] *Id.* at 1157.

[53] *Fox*, 2010 WL 5342956, at *2.

[54] 11 *Del. C.* § 203.

[55] No. 0901008717, 2010 WL 5692095, at * (Del. Fam. Ct. Feb. 4, 2010), *aff'd sub nom. State v. Adams*, 11 A.3d 226 (Table), 2010 WL 5342957 (Del. Dec. 20, 2010).

14

the court held that subparagraph "a" of the statute was not ambiguous because "there are circumstances in which a person could be assigned to Tier II or Tier III following a conviction for a misdemeanor offense."[56] As examples, the court made mention of repeat offenders, those that pleaded guilty to a lesser-included offense of their originally charged offense, and those whom the State sought, by motion, to have designated to a higher tier.[57] The court determined that the language was thus not ambiguous, at least as to the unavailability of relief for felony offenders, and that "a juvenile adjudicated delinquent for a misdemeanor may petition for relief regardless of the age of the victim, but a juvenile adjudicated delinquent for a felony offense is not eligible for relief from designation."[58] But it found that it was "not clear whether the 'Tier II or Tier III qualification' in the statute provides that a person may not seek relief for any Tier I offense or that any person designated to Tier I may seek relief."[59]

The Supreme Court agreed with the family court's determination. In *Grant v. State*[60] and *Adams v. State*,[61] the Supreme Court held that "a felony-level offender is not eligible for relief from registration under title 11, section 4121(d)(6) of the Delaware Code because the language of the statute clearly states that only

---

[56] *Id.* at *3.

[57] *Id.*

[58] *Id.* at *4.

[59] *Id.*

[60] 11 A.3d 226 (Table), 2010 WL 5232959 (Del. Dec. 20, 2010).

[61] 2010 WL 5342957.

misdemeanor-level offenders are eligible for relief."[62]

In *State v. K.S.*, the family court applied the above decisions and summarized the three-element test from 11 *Del. C.* § 4121(d)(6) as follows, eliding the "Tier II or Tier III" language from subparagraph "a":

> [M]isdemeanor-level offenders may seek relief from registration if 1) the crime with which they were convicted . . . mandates placement on the Sex Offender Registry at Tier I; 2) the offender has not previously been convicted of a violent felony; and 3) the sentencing court determines by a preponderance of the evidence that the offender is not likely to pose a threat to the public safety if relieved from the registration requirements.[63]

This Court confronted the construction of the relief-from-designation provision in *State v. President*.[64] The defendant in *President* pleaded *nolo contendere* to four counts of Unlawful Sexual Contact in the Third Degree, a Tier I misdemeanor.[65] The victim was eleven years old at the time of the offense.[66] The defendant filed a motion for relief from designation, and the State initially offered no specific objections to the motion.[67] The Court raised two concerns: first, whether a defendant may seek relief from designation for a Tier I offense like Unlawful Sexual Contact in the Third

---

[62] *Grant*, 2010 WL 5232959, at *1 (citing *Adams*, 2010 WL 5342957, at *2).

[63] No. 0806024668, 2011 WL 5345404, at *3 (Del. Fam. Ct. June 23, 2011) (citing *Grant*, 2010 WL 5232959, at *1; *Adams*, 2010 WL 5342957, at *1–*2).

[64] 2014 WL 595406 (Del. Super. Jan. 2, 2014).

[65] *Id.* at *1.

[66] *Id.*

[67] *Id.*

Degree; and second, whether the victim's age barred the defendant from seeking relief.[68] The Court sought supplemental memoranda, and the parties appeared to take the position that the statute did not permit relief for Tier I offenders.[69] The Court accepted the parties' position, and based its holding on the fact that, regardless of the construction of the statute, the victim's age barred the defendant from relief.[70]

*B. Construing the Statute in Light of its Text, and Indicators of Legislative Intent*

In light of the text of the statute, a careful application of existing case law, and the indicators of legislative intent within Code and SB 60's legislative history, the Court finds that 11 *Del. C.* § 4121(d)(6) provides the possibility of relief for offenders convicted of Tier I misdemeanor offenses.

*1. Rules of Statutory Construction*

A statute "is ambiguous if it is susceptible of two reasonable interpretations."[71] "Where a statute contains unambiguous language that clearly reflects the intent of the legislature, then the language of the legislature controls."[72]

"A statute which appears facially unambiguous can be rendered ambiguous by

---

[68] *Id.* at *2.

[69] *Id.*

[70] *Id.* at *2–*3.

[71] *Bon Ayre Land, LLC v. Bon Ayre Cmty. Ass'n*, 149 A.3d 227, 233 n.21 (Del. 2016) (quoting *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011)).

[72] *Hoover v. State*, 958 A.2d 816, 820 (Del. 2008) (citing *Sandt v. Del. Solid Waste Auth.*, 640 A.2d 1030, 1032 (Del. 1994)).

its interaction with, and its relation to, other statutes."[73]   And "[w]hen a statute contains 'latent' ambiguities despite its superficial clarity, courts may turn to legislative history or other aids for guidance."[74]

"[T]he Court may refer to parts of the legislative record," including legislative debates, "to establish the purpose of legislation where the record reveals more information about the enactments."[75]   Both the Supreme Court and this Court occasionally turn to the debates of the General Assembly as evidence of legislative intent.[76]

*2. Analysis of Statutory Text*

Turning first to the statutory text, this Court reiterates its earlier holding in *State v. President* and the family court's dicta in *State v. E.A.* and holds that the language of the statute is ambiguous as to relief from designation for offenders convicted of Tier I misdemeanors.[77]   Given the nature of the ambiguity and contradiction, the rule against surplusage, and the Code's own interpretive framework, the best construction of the statute finds the possibility of relief for offenders convicted of Tier I misdemeanors.

---

[73] 2A Sutherland *Statutory Construction* § 46:4 (7th ed. 2016).

[74] *Id.*

[75] *Hoover*, 958 A.2d at 820 (citing *Stifftel v. Malarkey*, 378 A.2d 133, 138 (Del. Ch. 1977)).

[76] *See, e.g., Hoover*, 958 A.2d at 820; *Doe No. 7 v. Indian River Sch. Dist.*, No. K09C-12-042, 2012 WL 2044347, at *2 (Del. Super. Apr. 20, 2012); *Mulford v. Dep't of Nat. Res. & Envtl Control*, No. 05C-02-028, 2007 WL 4576616, at *4 (Del. Super. Nov. 5, 2007).

[77] *President*, 2014 WL 595406, at *2; *E.A.*, 2010 WL 5692095, at *4.

The ambiguity in this statute arises from the contradiction in both the opening part of paragraph (6) and within subparagraph (a):

> (6) Notwithstanding any provision in this section or in § 4120 of this title to the contrary, *any person* who would otherwise be designated as a sex offender . . . may petition the sentencing court for relief from such designation, and from all obligations imposed by this section and § 4120 of this title if:
> a. The Tier II or Tier III offense for which the person was convicted was a misdemeanor and the victim was not a child under 13 years of age . . . .[78]

As a structural matter, the provision starts with a sweeping scope, allowing "any person who would otherwise be designated" to petition. The scope of persons that may petition for relief rapidly diminishes by imposition of a tripartite test. The first element of that test is found in subparagraph "a," which requires that the Tier II or Tier III offense for which the person was convicted be a misdemeanor. As noted by multiple courts and by Mr. O'Dell here, there are no Tier II or Tier III misdemeanors, a facial contradiction.

The State, and the family court in *State v. E.A.*, rightly point out that an offender may be designated to a higher tier than his underlying offense under certain circumstances.[79] But the language of the subparagraph does not refer to Tier II or Tier III *offenders*; it refers instead to Tier II or Tier III *offenses*. As enumerated in § 4121, none of the offenses within Tier II or Tier III are misdemeanors. The

---

[78] 11 *Del. C.* § 4121(d)(6).

[79] *E.A.*, 2010 WL 5692095, at *3.

contradiction in the statute is striking, because by either the federal or state definitions, Tier II or Tier III offenses are never misdemeanors.

But resort to the textual canons of statutory construction can be of only limited utility in this case. "It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed."[80] Put differently, "[w]ords in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning, and courts must ascribe a purpose to the use of statutory language, if reasonably possible."[81] The issue in the case of a contradiction such as this one is that either interpretation is in danger of making part of the statute surplusage. Reading the statute to permit relief for Tier I misdemeanants renders the phrase "Tier II or Tier III" surplusage. But reading the statute to *prohibit* relief for Tier I misdemeanants essentially treats the entire paragraph as surplusage, because that reading would prohibit *any* offenders from petitioning the sentencing court for relief. The less mischievous result would flow from construing the statute to permit relief for Tier I offenders, and to view the inclusion of the phrase "Tier II or Tier III" in subparagraph "a" as a drafting error.

Perhaps more persuasive than the general canons of statutory construction are the Criminal Code's own interpretive framework and statement of purpose. The

---

[80] *Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883).

[81] *Chase Alexa, LLC v. Kent Cty. Levy Court*, 991 A.2d 1148, 1152 (Del. 2010) (quoting *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994)).

Criminal Code discards the rule of lenity and instead mandates that "the provisions herein must be construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this title."[82] Among the purposes of the Code are "[t]o differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor" and "[t]o insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection."[83]

While these interpretive guides do not provide carte blanche for any court to depart from the text of a clear statute, they are helpful in determining which of the competing interpretations to assign this contradictory and ambiguous one. Reading the statute to allow relief for misdemeanants that were assigned to Tier II or Tier III, but not to misdemeanants assigned to Tier I, would fly in the face of one of the basic purposes of the Criminal Code. Tier I offenders are so because, of all persons convicted of sex offenses, the crime for which they were convicted renders them among the least likely to reoffend. An offender who would otherwise be designated to Tier I would only arrive at a higher tier because of a more serious risk to reoffend based on (1) actual reoffense, (2) evidence from the State that assigning the offender a higher classification would enhance public safety, or (3) the fact that the offender pleaded guilty to a lesser-included charge of a more serious offense. Even though

---

[82] 11 *Del. C.* § 203.
[83] *Id.* § 201.

21

registration and community notification is not a penalty as such, it would thwart the basic purposes of the Criminal Code to provide, disproportionate to the offender's risk level, the possibility of *complete* relief from all registration and notification requirements to moderate and high-risk offenders, while denying it to low-risk offenders.

Given the nature of the ambiguity and contradiction within the statute, the rule against surplusage, and the Code's own interpretive framework, the best interpretation of the statute strikes "Tier II and Tier III" from § 4121(d)(6)a., providing the possibility of relief for Tier I offenders so long as the other elements are met. This reading comports with Supreme Court precedent, which suggests that misdemeanants are to be afforded the possibility of relief from designation under the provision,[84] and the family court's most recent interpretation of the statute.[85]

*3. Legislative History*

The legislative history of the statute also augurs well for this interpretation. One of the key elements that the parties did not provide when this Court previously considered § 4121(d)(6) was any argument or evidence relating to the intent of the legislature.[86] With the benefit of full briefing and the opportunity to review the legislative record, the Court holds that the unmistakable intent of the legislature was to provide an avenue for relief for Tier I misdemeanor offenders. To the extent that

---

[84] Grant, 2010 WL 5232959, at *1 (citing *Adams*, 2010 WL 5342957, at *2).

[85] *State v. K.S.*, 2011 WL 5345404, at *3.

[86] *See State v. President*, 2014 WL 595406, at *2.

*President* differs in result or dicta from this decision, it is overruled.

While the Court uses caution in assigning intent to the General Assembly based on the statements of its individual members, it does "consider statements by any members during legislative debates which show a common agreement in the legislature about the meaning of an ambiguous provision, and statements which are consistent with the statute's language and other legislative events."[87]

Here, the answers provided by the Chief of Staff of the Department of Justice as well as the questions asked by individual members reveal a consensus understanding of the effects of the bill. There is no question that all of the members present at the final reading of the bill in their respective chambers were told by a representative of the Department of Justice that the section as written provided an avenue for relief for offenders convicted of Tier I misdemeanors. And questions by the members revealed a desire that those accused of minor sexual crimes have an opportunity to seek relief from designation at sentencing. When viewed in light of the synopsis of the amendment, which indicated a desire to limit this relief to those who had not committed offenses against children, the legislative debates show a General Assembly intent upon leaving open a discretionary avenue for a sentencing court to consider whether those convicted of Tier I misdemeanors might merit relief from designation under the sex offender registration and notification scheme.

The legislative history of 11 *Del. C.* § 4121(d)(6) confirms that the contradictory language of the statute is best read to permit Tier I misdemeanor

---

[87] 2A Sutherland *Statutory Construction* § 48:13 (7th ed. 2016) (citations omitted).

offenders who otherwise meet the requirements of the paragraph to receive relief from designation as a sex offender.

*II. Mr. O'Dell is Entitled to Relief Because He is Unlikely to Pose a Threat to Public Safety if Relieved from his Obligation to Register*

Having determined that misdemeanor offenders like Mr. O'Dell may petition the Court for relief from designation as a sex offender, the Court must now determine whether Mr. O'Dell himself has satisfied the three elements required by the statute.

The State and Mr. O'Dell agree that the offense with which he was charged is a Tier I misdemeanor offense and that he was not previously convicted of a felony. The sole issue for the Court's decision is whether Mr. O'Dell has shown "by a preponderance of the evidence that [he] is not likely to pose a threat to public safety if released from the obligations imposed" by the sex offender registration and notification scheme.[88]

The Court at the outset notes that Mr. O'Dell's plea of guilty to Unlawful Sexual Contact in the Third Degree arises from a charge that he had sexual relations with a girl four years his junior. Their ages (he was nineteen at the time and the victim was fifteen), the distance Mr. O'Dell had to travel (walking from Delmar, Maryland to the Dover area), and the fact that Mr. O'Dell aided the victim when she snuck away from her family's home with him are aggravating circumstances in the Court's view and are indicative of the serious nature of the crime to which Mr. O'Dell has pleaded guilty.

---

[88] 11 *Del. C.* § 4121(d)(6)c.

With that consideration in mind, however, the question is whether Mr. O'Dell has shown, by a preponderance of the evidence, that he is not likely to pose a threat to public safety going forward. To that end, he has offered evidence of a psychological evaluation which indicated that he presents a low-to-moderate or moderate risk of reoffense.

The Court assigns weight to the results of that evaluation. He has experienced developmental delays as a result of a brain injury and been subject to abuse at home. He did not indicate any other age-inappropriate or criminal sexual behavior. At the time of his evaluation, he had a fairly restricted living situation with his mother.

The evaluator noted that some of his risk factors are mitigated by his circumstances. For example, Mr. O'Dell received points on the STATIC-99R for having a young age at the time of the offense, never living with a significant other, and having an unrelated victim. The fact that he never lived with a significant other does not substantially elevate his risk, the examiner opined, because he had established romantic relationships in the past and desires a long-term committed relationship. The STATIC-99R indicated a Low-Moderate risk of reoffense.

Mr. O'Dell earned a Moderate risk result on the Stable 2007 based on some of the same factors, and additionally "having few social supports, feeling lonely and rejected, being impulsive, and having some negative emotionality." Mr. O'Dell's risk factors are explained in part by his living environment and the experience of past traumas, which could be mitigated by mental health treatment.

The evaluator also pointed out that "there is no indication that [Mr. O'Dell]

would be exploitative in his sexual relationships and he is unlikely to engage in a future sexual offense." Among other ways to mitigate Mr. O'Dell's risk would be participation in mental health treatment and substance abuse treatment. The evaluator also suggested a change in housing. At the hearing on these motions, Mr. O'Dell's counsel indicated that Mr. O'Dell has moved out of his mother's house and is now living with his sister.

In view of the uncontradicted evidence provided by Mr. O'Dell of his relatively low risk of reoffense, the Court finds that he is not likely to pose a threat to public safety if relieved of his obligations under the sex offender statute, and will grant him relief from designation as a sex offender.

## CONCLUSION

The statute provides an avenue for offenders convicted of Tier I misdemeanors to petition for relief from the sex offender registration and notification statutes. The Court, upon consideration of Mr. O'Dell's motion for relief from designation, and the State's motion to designate Mr. O'Dell at Tier I, finds that Mr. O'Dell is unlikely to pose a threat to public safety if his motion is granted. The State's Motion to Designate is **DENIED** and Mr. O'Dell's Motion for Relief is **GRANTED**.

IT IS SO ORDERED.

Hon. William L. Witham, Jr.

WLW/dmh
oc:    Prothonotary
cc:    Kathleen A. Dickerson, Esquire
         Anthony J. Capone, Esquire

26